# BOWEN, SECRETARY OF HEALTH AND HUMAN SERVICES *v.* YUCKERT

No. 85–1409. Argued January 13, 1987—Decided June 8, 1987

POWELL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, STEVENS, O'CONNOR, and SCALIA, JJ., joined. O'CONNOR, J., filed a concurring opinion, in which STEVENS, J., joined, *post*, p. 155. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 159.

*Edwin S. Kneedler* argued the cause for petitioner. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Willard,* and *Deputy Solicitor General Wallace.*

*Carole F. Grossman* argued the cause for respondent. With her on the brief were *James A. Douglas* and *Peter Komlos-Hrobsky.**

JUSTICE POWELL delivered the opinion of the Court.

The question in this case is whether the Secretary of Health and Human Services may deny a claim for Social Security disability benefits on the basis of a determination that the claimant does not suffer from a medically severe impairment that significantly limits the claimant's ability to perform basic work activities.

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Alabama et al. by *Robert Abrams*, Attorney General of New York, *O. Peter Sherwood*, Solicitor General, *Charles A. Graddick*, Attorney General of Alabama, *Harold M. Brown*, Attorney General of Alaska, *John Steven Clark*, Attorney General of Arkansas, *Duane Woodard*, Attorney General of Colorado, *Jim Smith*, Attorney General of Florida, *Corinne K. A. Watanabe*, Attorney General of Hawaii, *Neil F. Hartigan*, Attorney General of Illinois, and *Roma J. Stewart*, Solicitor General, *Linley E. Pearson*, Attorney General of Indiana, *Thomas J. Miller*, Attorney General of Iowa, *Robert T. Stephan*, Attorney General of Kansas, *David L. Armstrong*, Attorney General of Kentucky, *William J. Guste, Jr.*, Attorney General of Louisiana, *Stephen H. Sachs*, Attorney General of Maryland, *Frank J. Kelley*, Attorney General of Michigan, *Edwin Lloyd Pittman*, Attorney General of Mississippi, *Robert M. Spire*, Attorney General of Nebraska, *W. Cary Edwards*, Attorney General of New Jersey, *Paul Bardacke*, Attorney General of New Mexico, *Lacy H. Thornburg*, Attorney General of North Carolina, *Nicholas J. Spaeth*, Attorney General of North Dakota, *Anthony J. Celebrezze, Jr.*, Attorney General of Ohio, *Michael C. Turpen*, Attorney General of Oklahoma, *LeRoy S. Zimmerman*, Attorney General of Pennsylvania, *Mark V. Meierhenry*, Attorney General of South Dakota, *Jim Mattox*, Attorney General of Texas, *Jeffrey L. Amestoy*, Attorney General of Vermont, *Bronson C. La Follette*, Attorney General of Wisconsin, and *A. G. McClintock*, Attorney General of Wyoming; for the city of New York et al. by *Frederick A. O. Schwarz, Jr., Leonard Koerner, Michael D. Young, Julie Downey, Jessica Heinz*, and *Judson H. Miner;* for the American Association of Retired Persons by *Alfred Miller;* and for the American Diabetes Association et al. by *Frederick M. Stanczak, Richard E. Yaskin, Kalman Finkel, John E. Kirklin, Nancy Morawetz, Robert E. Lehrer, Joseph A. Antolin*, and *Shelley Davis.*

## I

Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U. S. C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a). Both titles of the Act define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." § 423(d)(1)(A). See § 1382c(a)(3)(A). The Act further provides that an individual

> "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 ed. and Supp. III).

The Secretary has established a five-step sequential evaluation process for determining whether a person is disabled. 20 CFR §§ 404.1520, 416.920 (1986). Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. §§ 404.1520(b), 416.920(b). If he is not, the decisionmaker proceeds to step two, which determines whether the claimant has a medically

severe impairment or combination of impairments. That determination is governed by the "severity regulation" at issue in this case. The severity regulation provides:

> "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." §§ 404.1520(c), 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." §§ 404. 1521(b), 416.921(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, coworkers, and usual work situations"; and "[d]ealing with changes in a routine work setting." *Ibid.*

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d), 416.920(d); 20 CFR pt. 404, subpt. P, App. 1 (1986). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. §§ 404.1520(e),

416.920(e). If the claimant cannot perform this work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. §§ 404.1520(f), 416.920(f).

The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U. S. C. §§ 421(a), 1383b(a); 20 CFR §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered *de novo* by the state agency. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U. S. C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 CFR §§ 404.929, 416.1429, 422.201 *et seq.* (1986). Third, the claimant may seek review by the Appeals Council. 20 CFR §§ 404.967 *et seq.*, 416.1467 *et seq.* (1986). Once the claimant has exhausted these administrative remedies, he may seek review in federal district court. 42 U. S. C. § 405(g). See generally *Bowen* v. *City of New York,* 476 U. S. 467, 472 (1986).

## II

Respondent Janet Yuckert applied for both Social Security disability insurance benefits and SSI benefits in October 1980. She alleged that she was disabled by an inner ear dysfunction, dizzy spells, headaches, an inability to focus her eyes, and flatfeet. Yuckert had been employed as a travel agent from 1963 to 1977. In 1978 and 1979, she had worked intermittently as a real estate salesperson. Yuckert was 45 years old at the time of her application. She has a high school education, two years of business college, and real estate training.

The Washington Department of Social and Health Services determined that Yuckert was not disabled. The agency reconsidered Yuckert's application at her request, and again determined that she was not disabled. At the next stage of the administrative review process, the ALJ found that, although Yuckert suffered from "episodes of dizziness, or vision problems," App. to Pet. for Cert. 28a, "[m]ultiple tests . . . failed to divulge objective clinical findings of abnormalities that support the claimant's severity of the stated impairments." *Id.*, at 27a.[1] The ALJ also found that Yuckert was pursuing a "relatively difficult" 2-year course in computer programming at a community college and was able to drive her car 80 to 90 miles each week. *Id.*, at 27a–28a. In light of the medical evidence and the evidence of her activities, the ALJ concluded that her medically determinable impairments were not severe under 20 CFR §§ 404.1520(c) and 416.920(c) (1986). The Appeals Council denied Yuckert's request for review on the ground that the results of additional psychological tests supported the ALJ's finding that she had not suffered a significant impairment of any work-related abilities. App. to Pet. for Cert. 22a. Yuckert then sought review in the United States District Court for the Western District of Washington. The case was referred to a Magistrate, who concluded that the Secretary's determination was supported by substantial evidence. The District Court adopted the Magistrate's report and affirmed the denial of Yuckert's claim. *Id.*, at 14a.

The United States Court of Appeals for the Ninth Circuit reversed and remanded without considering the substantiality of the evidence. *Yuckert* v. *Heckler*, 774 F. 2d 1365, 1370 (1985). The court held that the Act does not authorize

---

[1] Yuckert's physician diagnosed her condition as bilateral labyrinthine dysfunction. App. to Pet. for Cert. 26a. Another physician found only "non-specific congestion of the nasal and middle ear mucous membranes." *Ibid.* X rays, an electrocardiogram, and a spinal puncture revealed no abnormalities. *Id.*, at 27a.

the Secretary to deny benefits on the basis of a determination that the claimant is not severely impaired. The court focused on the statutory provision that a person is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial. gainful work . . . ." 42 U. S. C. § 423(d)(2)(A) (1982 ed. and Supp. III). In the court's view, this provision requires that "both medical and vocational factors [*i. e.*, age, education, and work experience] be considered in determining disability." *Yuckert* v. *Heckler*, 774 F. 2d, at 1370. The court rejected the Secretary's contention that the 1984 amendments to the Act endorsed step two of the disability evaluation process. The court concluded that "[t]he legislative history does not suggest that Congress intended to permit findings of nondisability based on medical factors alone." *Ibid.* (citation omitted). Finally, the court relied upon Court of Appeals holdings that the burden of proof shifts to the Secretary once the claimant shows an inability to perform his previous work.[2] In the court's view, step two of the Secretary's evaluation process is inconsistent with this assignment of burdens of proof, because it allows the Secretary to deny benefits to a claimant who is unable to perform past work without requiring the Secretary to show that the claimant can perform other work. Accordingly, the court invalidated the severity regulation, 20 CFR § 404.1520(c) (1986).[3] Because of the importance of the issue, and because the court's decision con-

---

[2] *E. g.*, *Valencia* v. *Heckler*, 751 F. 2d 1082, 1086–1087 (CA9 1985); *Francis* v. *Heckler*, 749 F. 2d 1562, 1564 (CA11 1985).

[3] Although Yuckert had applied for SSI benefits as well as disability insurance benefits, the complaint she filed in District Court referred only to the disability insurance program of Title II. Accordingly, the Court of Appeals did not invalidate 20 CFR § 416.920(c) (1986), the severity regulation applicable to the SSI program.

flicts with the holdings of other Courts of Appeals,[4] we granted certiorari. 476 U. S. 1114 (1986). We now reverse.

## III

Our prior decisions recognize that "Congress has 'conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the Act.'" *Heckler* v. *Campbell*, 461 U. S. 458, 466 (1983) (quoting *Schweiker* v. *Gray Panthers*, 453 U. S. 34, 43 (1981)). The Act authorizes the Secretary to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same" in disability cases. 42 U. S. C. § 405(a). We have held that "[w]here, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." *Heckler* v. *Campbell, supra,* at 466 (footnote and citations omitted). In our view, both the language of the Act and its legislative history support the Secretary's decision to require disability claimants to make a threshold showing that their "medically determinable" impairments are severe enough to satisfy the regulatory standards.

---

[4] Some Courts of Appeals have upheld the facial validity of the severity regulation. *McDonald* v. *Secretary of Health and Human Services*, 795 F. 2d 1118, 1121–1126 (CA1 1986); *Hampton* v. *Bowen*, 785 F. 2d 1308, 1311 (CA5 1986); *Farris* v. *Secretary of Health and Human Services*, 773 F. 2d 85, 89–90 (CA6 1985); *Flynn* v. *Heckler*, 768 F. 2d 1273, 1274–1275 (CA11 1985) *(per curiam)*. Others have joined the Court of Appeals for the Ninth Circuit in holding the severity regulation invalid on its face. *Wilson* v. *Secretary of Health and Human Services*, 796 F. 2d 36, 40–42 (CA3 1986); *Johnson* v. *Heckler*, 769 F. 2d 1202, 1209–1213 (CA7 1985); *Brown* v. *Heckler*, 786 F. 2d 870, 871–872 (CA8 1986); *Hansen* v. *Heckler*, 783 F. 2d 170, 174–176 (CA10 1986).

## A

As noted above, the Social Security Amendments Act of 1954 defined "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 68 Stat. 1080, 42 U. S. C. § 423(d)(1)(A). The severity regulation requires the claimant to show that he has an "impairment or combination of impairments which significantly limits" "the abilities and aptitudes necessary to do most jobs." 20 CFR §§ 404.1520(c), 404.1521(b) (1986). On its face, the regulation is not inconsistent with the statutory definition of disability. The Act "defines 'disability' in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace." See *Heckler* v. *Campbell, supra,* at 459–460. The regulation adopts precisely this functional approach to determining the effects of medical impairments. If the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity. The Secretary, moreover, has express statutory authority to place the burden of showing a medically determinable impairment on the claimant. The Act provides that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." § 423(d)(5)(A) (1982 ed. and Supp. III). See *Mathews* v. *Eldridge,* 424 U. S. 319, 336 (1976).[5]

---

[5] The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true, as Yuckert notes, that the Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy. But the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work. If the process ends at step two, the burden of proof never

The requirement of a threshold showing of severity also is consistent with the legislative history of § 423(d)(1)(A). The Senate Report accompanying the 1954 Amendments states:

> "The physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work. Standards for evaluating the severity of disabling conditions will be worked out in consultation with the State agencies." S. Rep. No. 1987, 83d Cong., 2d Sess., 21 (1954).

House Rep. No. 1698, 83d Cong., 2d Sess., 23 (1954), contains virtually identical language. Shortly after the 1954 Amendments were enacted, the Secretary promulgated a regulation stating that "medical considerations alone may justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or other similar abnormality or combination of slight abnormalities." 20 CFR § 404.1502(a) (1961). This regulation, with minor revisions, remained in effect until the sequential evaluation regulations were promulgated in 1978.

### B

The Court of Appeals placed little weight on § 423(d)(1)(A) or its legislative history, but concluded that the severity regulation is inconsistent with § 423(d)(2)(A). We find no basis for this holding. Section 423(d)(2)(A), set forth *supra*, at 140, was enacted as part of the Social Security Amend-

---

shifts to the Secretary. Similarly, if the impairment is one that is conclusively presumed to be disabling, the claimant is not required to bear the burden of showing that he is unable to perform his prior work. See *Bluvband* v. *Heckler*, 730 F. 2d 886, 891 (CA2 1984). This allocation of burdens of proof is well within the Secretary's "exceptionally broad authority" under the statute. *Schweiker* v. *Gray Panthers*, 453 U. S. 34, 43 (1981). It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

ments of 1967, 81 Stat. 868. It states that "an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . ." *Ibid.* The words of this provision limit the Secretary's authority to grant disability benefits, not to deny them.[6] Section 423(d)(2)(A) restricts eligibility for disability benefits to claimants whose medically severe impairments prevent them from doing their previous work *and* also prevent them from doing any other substantial gainful work in the national economy. If a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits. In such a case, there is no reason for the Secretary to consider the claimant's age, education, and work experience.

The legislative history reinforces this understanding of the statutory language. Section 423(d)(2)(A) was intended to "reemphasize the predominant importance of medical factors in the disability determination." S. Rep. No. 744, 90th Cong., 1st Sess., 48 (1967). The 1967 Amendments left undisturbed the longstanding regulatory provision that "medical considerations alone may justify a finding that the individual is not under a disability." 20 CFR § 404.1502(a) (1966). Indeed, it is clear that Congress contemplated a sequential evaluation process:

> "The bill would provide that such an individual would be disabled [i] only if it is shown that he has a severe medically determinable physical or mental impairment or impairments; [ii] that if, despite his impairment or impairments, an individual still can do his previous work, he is not under a disability; and [iii] that if, considering the severity of his impairment together with his age, educa-

---

[6] According to the dissent our opinion implies that the Secretary has unlimited authority to deny meritorious claims. *Post,* at 160, n. 1. It hardly needs saying that our opinion carries no such implication.

tion, and experience, he has the ability to engage in some other type of substantial gainful work that exists in the national economy even though he can no longer do his previous work, he also is not under a disability . . . ." S. Rep. No. 744, *supra*, at 48–49.

See H. R. Rep. No. 544, 90th Cong., 1st Sess., 30 (1967).[7]

## C

If there was any lingering doubt as to the Secretary's authority to require disability claimants to make a threshold

---

[7] JUSTICE BLACKMUN's dissent argues that a "straightforward reading" of the statute requires the Secretary expressly to consider the age, education, and work experience of any claimant who is unable to perform his past work, and who is able to show a medically determinable impairment, however trivial. *Post*, at 163. The dissent's reading would make the severity of the claimant's *medical* impairment turn on *nonmedical* factors such as education and experience. For example, the dissent asserts that the Court's "reasoning begs the very question presented for resolution today— whether the severity of a claimant's *medical* impairment can be discerned without reference to the individual's age, education, and work experience." *Post*, at 168, n. 7 (emphasis added). Moreover, the dissent ignores the fact that, below a threshold level of medical severity, an individual is not prevented from engaging in gainful activity "*by reason of*" the physical or mental impairment. 68 Stat. 1080, 42 U. S. C. § 423(d)(1)(A). Curiously, the dissent bases its position largely on § 423(d)(2)(A), a provision added to "reemphasize the predominant importance of medical factors," S. Rep. No. 744, 90th Cong., 1st Sess., 48 (1967). The dissent's reading of § 423(d)(2)(C) also is novel. That provision applies to the Secretary's determination "whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . . ." As the dissenters read this provision, it does not support the severity regulation because it "says nothing of the severity *level* necessary to meet the eligibility requirements." *Post*, at 174 (emphasis added). Of course, any threshold, however low, is still a threshold. Finally, the fact that the disability claims of widows and widowers are decided solely on the basis of medical factors, see 42 U. S. C. § 423(d)(2)(B); *post*, at 163–164, does not imply that Congress intended the Secretary expressly to consider nonmedical factors in other cases, no matter how trivial the medical impairment. In sum, the dissent's reading of the statute is less than "straightforward."

showing of medical severity, we think it was removed by § 4 of the Social Security Disability Benefits Reform Act of 1984, 98 Stat. 1800. It is true that " '[t]he Reform Act is remedial legislation, enacted principally to be of assistance to large numbers of persons whose disability benefits have been terminated.' " *Bowen* v. *City of New York*, 476 U. S., at 486, n. 14 (quoting *City of New York* v. *Heckler*, 755 F. 2d 31, 33 (CA2 1985)). But Congress nevertheless expressed its approval of the severity regulation both in the statute and in the accompanying Reports.[8] Sections 4(a)(1) and (b) of the 1984 Act provide:

> "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe

---

[8] JUSTICE BLACKMUN's dissent recognizes, as it must, that the Secretary's "severity regulation" requires a claimant to show a medically severe impairment or combination of impairments. Absent such a showing, it is unnecessary to consider the claimant's "age, education, and work experience." The dissent concludes, however, that the regulation "contradicts the statutory language" and therefore is invalid. *Post*, at 159. It is explicitly clear from the legislative history of the 1984 amendments that Congress perceived no such inconsistency. Indeed, both the Senate and House Reports endorse the severity regulation. The Senate Report, for example, states that a "claim must be disallowed" unless the Secretary determines "first, on a strictly medical basis and without regard to vocational factors, whether the individual's impairments, considered in combination, are medically severe. If they are not, the claim must be disallowed." S. Rep. No. 98–466, p. 22 (1984). The House Report is not inconsistent, and the Conference Report is in full accord. See *infra*, at 151–152. The dissent nevertheless views much of the legislative history as "ambiguous," *post*, at 175; see *post*, at 177. Even if we agreed that there was some ambiguity, we would defer to the Secretary's interpretation of the statute. See *Heckler* v. *Campbell*, 461 U. S. 458, 466 (1983); *supra*, at 145.

combination of impairments, the combined effect of the impairments shall be considered throughout the disability determination process." 42 U. S. C. §§ 423(d)(2)(C), 1382c(a)(3)(F) (1982 ed. and Supp. III).

Congress thus recognized once again that the Secretary may make an initial determination of medical severity, and that he need not consider the claimant's age, education, and experience unless he finds "a medically severe combination of impairments."

The Senate Report accompanying the 1984 amendments expressly endorses the severity regulation.

"[T]he new rule [requiring consideration of the combined effects of multiple impairments] is to be applied in accordance with the existing sequential evaluation process and is not to be interpreted as authorizing a departure from that process. . . . The amendment requires the Secretary to determine first, on a strictly medical basis and without regard to vocational factors, whether the individual's impairments, considered in combination, are medically severe. If they are not, the claim must be disallowed. Of course, if the Secretary does find a medically severe combination of impairments, the combined impact of the impairments would also be considered during the remaining stages of the sequential evaluation process." S. Rep. No. 98–466, p. 22 (1984).

The House Report agrees:

"[I]n the interests of reasonable administrative flexibility and efficiency, a determination that a person is not disabled may be based on a judgment that the person has no impairment, or that the impairment or combination of impairments [is] slight enough to warrant a presumption that the person's work ability is not seriously affected. The current 'sequential evaluation process' allows such a determination, and the committee does not wish to elimi-

nate or seriously impair use of that process." H. R. Rep. No. 98–618, p. 8 (1984).[9]

Finally, the Conference Report stated:

"[I]n the interests of reasonable administrative flexibility and efficiency, a determination that an individual is not disabled may be based on a judgment that an individual has no impairment, or that the medical severity of his impairment or combination of impairments is slight enough to warrant a presumption, even without a full evaluation of vocational factors, that the individual's ability to perform [substantial gainful activity] is not seriously affected. The current 'sequential evaluation process' allows such a determination and the conferees do not intend to either eliminate or impair the use of that process." H. R. Conf. Rep. No. 98–1039, p. 30 (1984).[10]

---

[9] The House Report observed that the Secretary had "been criticized for basing terminations of benefits solely and erroneously on the judgment that the person's medical evaluation is 'slight,' according to very strict criteria, and is therefore not disabling, without making any further evaluation of the person's ability to work." H. R. Rep. No. 98–618, p. 7 (1984). The Report "notes that the Secretary has already planned to re-evaluate the current criteria for non-severe impairments, and urges that all due consideration be given to revising those criteria to reflect the real impact of impairments upon the ability to work." Id., at 8. These comments about the Secretary's application of the severity regulation hardly suggest that the regulation is invalid on its face.

[10] Senator Long, a ranking Member of the Conference Committee, observed that "[s]ome courts . . . have ruled that the Secretary cannot deny claims solely on the basis that the individual has no severe medical condition but must always make an evaluation of vocational capacities." 130 Cong. Rec. 25981 (1984). Senator Long went on to state that the Senate bill, that was followed by the conference bill with only "minor language changes of a technical nature," ibid., was "carefully drawn to reaffirm the authority of the Secretary to limit benefits to only those individuals with conditions which can be shown to be severe from a strictly medical standpoint—that is, without vocational evaluation," ibid. Senator Long was one of the sponsors of the disability program when it was enacted in 1956, see S. Rep. No. 2133, 84th Cong., 2d Sess., 140 (1956), and also was Chairman of the Senate Finance Committee when the 1967

## IV

We have recognized that other aspects of the Secretary's sequential evaluation process contribute to the uniformity and efficiency of disability determinations. *Heckler* v. *Campbell*, 461 U. S., at 461. The need for such an evaluation process is particularly acute because the Secretary decides more than 2 million claims for disability benefits each year, of which more than 200,000 are reviewed by administrative law judges. Department of Health and Human Services, Social Security Administration 1986 Annual Report to Congress, pp. 40, 42, 46. The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account. Similarly, step three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background.

Respondent Yuckert has conceded that the Secretary may require claimants to make a *"de minimis"* showing that their impairment is severe enough to interfere with their ability to work.[11] Brief for Respondent 22–23; Tr. of Oral Arg. 30. Yuckert apparently means that the Secretary may require a showing that the "impairment is so slight that it could not interfere with [the claimant's] ability to work, irrespective of

---

Amendments to the Act were enacted, see S. Rep. No. 744, 90th Cong., 1st Sess., 1 (1967).

[11] Although the issue was not briefed or argued by the parties, the dissent nevertheless concludes that the severity regulation should be invalidated because it is excessively vague. *Post*, at 168. The severity regulation plainly adopts a standard for determining the threshold level of severity: the impairment must be one that "significantly limits your physical or mental ability to do basic work activities." 20 CFR § 404.1520(c) (1986). Moreover, as discussed *supra*, at 141, the Secretary's regulations define "basic work activities" in detail.

age, education, and work experience." Brief for Respondent 22. She contends that the Secretary imposed only a *"de minimis"* requirement prior to 1978, but has required a greater showing of severity since then. As we have noted, however, Congress expressly approved the facial validity of the 1978 severity regulation in the 1984 amendments to the Act. Particularly in light of those amendments and the legislative history, we conclude that the regulation is valid on its face.[12]

---

[12] As the Court of Appeals for the Ninth Circuit invalidated the regulation on its face, we have no occasion to consider whether it is valid as applied. A number of Courts of Appeals have held that the Secretary has exceeded his authority by denying large numbers of meritorious disability claims at step two. See cases cited in n. 4, *supra*. We have noted that the House Report accompanying the 1984 amendments urged the Secretary to reevaluate the severity criteria to determine whether they were too strict. See n. 9, *supra*. Subsequent to the adjudication of Yuckert's disability claim, the Secretary issued a ruling "[t]o clarify the policy for determining when a person's impairment(s) may be found 'not severe' . . . ." Social Security Ruling 85–28, App. to Pet. for Cert. 37a. The ruling states:

"An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (*i. e.*, the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)." *Id.*, at 41a.

If the "evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work," the decisionmaker will conduct a "further evaluation of the individual's ability to do other work considering age, education and work experience." *Id.*, at 43a. We do not undertake to construe this ruling today.

We do, however, reject Yuckert's contention that invalidation of the regulation is an appropriate remedy for the Secretary's allegedly unlawful application of the regulation. See Brief for Respondent 44–47. The Court of Appeals did not invalidate the regulation on this ground. Moreover, there is no indication in the record that less drastic remedies would not have been effective.

## V

The judgment of the Court of Appeals for the Ninth Circuit is reversed. The case is remanded for the Court of Appeals to consider whether the agency's decision is supported by substantial evidence.

*It is so ordered.*

JUSTICE O'CONNOR, with whom JUSTICE STEVENS joins, concurring.

The Court is, I believe, entirely correct to find that the "step two" regulation is not facially inconsistent with the Social Security Act's definition of disability. Title 42 U. S. C. § 423(d)(2)(A) (1982 ed. and Supp. III) provides:

"[A]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

Step two on its face requires only that the claimant show that he or she suffers from "an impairment or combination of impairments . . . [that] significantly limit[s] . . . physical or mental ability to do basic work activities." 20 CFR § 404.1521(a) (1986). "Basic work activities," the regulation says, include "walking, standing, sitting, lifting, pulling, reaching, carrying, or handling[,] . . . seeing, hearing, and speaking, . . . [u]nderstanding, carrying out, and remembering simple instructions[,] . . . [u]se of judgment[,] . . . [r]esponding appropriately to supervision, co-workers and usual work situations[,] . . . [d]ealing with changes in a routine work setting." § 404.1521(b)(1)–(6). I do not see how a claimant unable to show a significant limitation in any of these areas can possibly meet the statutory definition of disability. For the reasons set out by the Court in Part III of

its opinion, I have no doubt that the Act authorizes the Secretary to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability. Accordingly, I concur in the Court's opinion and judgment that the regulation is not facially invalid, and that the case must be remanded so that the lower courts may determine whether or not the Secretary's conclusion that Janet Yuckert is not suffering from a sufficiently severe impairment is supported by substantial evidence.

I write separately, however, to discuss the contention of respondent and various *amici* (including 29 States and 5 major cities) that this facially valid regulation has been applied systematically to deny benefits to claimants who *do* meet the statutory definition of disability. Respondent directs our attention to the chorus of judicial criticism concerning the step two regulation, as well as to substantially unrefuted statistical evidence. Despite the heavy deference ordinarily paid to the Secretary's promulgation and application of his regulations, *Schweiker* v. *Gray Panthers*, 453 U. S. 34, 43 (1981), all 11 regional Federal Courts of Appeals have either enjoined the Secretary's use of the step two regulation[1] or imposed a narrowing construction upon it.[2] The

---

[1] *Dixon* v. *Heckler*, 785 F. 2d 1102 (CA2 1986) (preliminary injunction), cert. pending, No. 86–2; *Wilson* v. *Secretary of Health and Human Services*, 796 F. 2d 36 (CA3 1986); *Baeder* v. *Heckler*, 768 F. 2d 547 (CA3 1985); *Johnson* v. *Heckler*, 769 F. 2d 1202 (CA7 1985), cert. pending *sub nom. Bowen* v. *Johnson,* No. 85–1442; *Brown* v. *Heckler*, 786 F. 2d 870 (CA8 1986); *Yuckert* v. *Heckler*, 774 F. 2d 1365 (CA9 1985) (case below); *Hansen* v. *Heckler*, 783 F. 2d 170 (CA10 1986).

[2] *McDonald* v. *Secretary of Health and Human Services*, 795 F. 2d 1118 (CA1 1986) (relying upon Social Security Ruling 85–28); *Evans* v. *Heckler*, 734 F. 2d 1012 (CA4 1984); *Stone* v. *Heckler*, 752 F. 2d 1099 (CA5 1985); *Estran* v. *Heckler*, 745 F. 2d 340 (CA5 1984); *Farris* v. *Secretary of Health and Human Services*, 773 F. 2d 85 (CA6 1985); *Salmi* v. *Secretary of Health and Human Services*, 774 F. 2d 685 (CA6 1985); *McCruter* v. *Bowen*, 791 F. 2d 1544 (CA11 1986); *Brady* v. *Heckler*, 724 F. 2d 914 (CA11 1984).

frustration expressed by these courts in dealing with the Secretary's application of step two in particular cases is substantial, and no doubt in part accounts for the Court of Appeals' decision in this case to simply enjoin the regulation's further use.

Empirical evidence cited by respondent and the *amici* further supports the inference that the regulation has been used in a manner inconsistent with the statutory definition of disability. Before the step two regulations were promulgated approximately 8% of all claimants were denied benefits at the "not severe" stage of the administrative process; afterwards approximately 40% of all claims were denied at this stage. See *Baeder* v. *Heckler,* 768 F. 2d 547, 552 (CA3 1985). As the lower federal courts have enjoined use of step two and imposed narrowing constructions, the step two denial rate has fallen to about 25%. House Committee on Ways and Means, Background Material and Data on Programs Within the Jurisdiction of the Committee on Ways and Means, 99th Cong., 2d Sess., 114 (Comm. Print 1986). Allowance rates in Social Security disability cases have increased substantially when federal courts have demanded that the step two regulation not be used to disqualify those who are statutorily eligible. For example, in Illinois after entry of the injunction in *Johnson* v. *Heckler,* 769 F. 2d 1202 (CA7 1985), cert. pending *sub nom. Bowen* v. *Johnson,* No. 85–1442, the approval rate for claims climbed from 34.3% to 52% at the initial screening level and from 14.8% to 34.1% at the reconsideration level. See Brief for Alabama et al. as *Amici Curiae* 22.

To be sure the Secretary faces an administrative task of staggering proportions in applying the disability benefits provisions of the Social Security Act. Perfection in processing millions of such claims annually is impossible. But respondent's evidence suggests that step two has been applied systematically in a manner inconsistent with the statute. In-

deed, the Secretary himself has recently acknowledged a need to "clarify" step two in light of this criticism and has attempted to do so by issuing new interpretative guidelines. See Social Security Ruling 85–28, App. to Pet. for Cert. 37a.

In my view, step two may not be used to disqualify those who meet the statutory definition of disability. The statute does not permit the Secretary to deny benefits to a claimant who may fit within the statutory definition without determining whether the impairment prevents the claimant from engaging in either his prior work or substantial gainful employment that, in light of the claimant's age, education, and experience, is available to him in the national economy. Only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits without undertaking this vocational analysis. See *Evans* v. *Heckler*, 734 F. 2d 1012, 1014 (CA4 1984); *Estran* v. *Heckler*, 745 F. 2d 340, 341 (CA5 1984) *(per curiam); Brady* v. *Heckler*, 724 F. 2d 914, 920 (CA11 1984). As the Secretary has recently admonished in his new guideline:

> "Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued. In such a circumstance, if the impairment does not meet or equal the severity level of the relevant medical listing, sequential evaluation requires that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience." Social Security Ruling 85–28, App. to Pet. for Cert. 44a.

Applied in this manner, step two, I believe, can produce results consistent with the statute in the vast majority of cases

and still facilitate the expeditious and just settlement of claims.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

The definition of "disability" for purposes of the disability-insurance benefits program is set forth in § 223(d) of the Social Security Act, codified, as amended, at 42 U. S. C. § 423(d) (1982 ed. and Supp. III). Paragraph (2)(A) of that section states: "An individual . . . shall be determined to be under a disability only if his physical or mental *impairment or impairments are of such severity* that he is not only unable to do his previous work but cannot, *considering his age, education, and work experience,* engage in any other kind of substantial gainful work" (emphasis added). The "severity regulation" promulgated by the Secretary of Health and Human Services for purposes of the program, however, explains to a claimant: "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a *severe impairment* and are, therefore, not disabled. *We will not consider your age, education, and work experience.*" 20 CFR § 404.1520(c) (1986) (emphasis added). This regulation, on its very face, directly contradicts the statutory language requiring that a claimant's age, education, and work experience be considered in a case where the claimant cannot perform his past work. It is thus invalid. The legislative history of § 423(d) confirms that the severity regulation exceeds the Secretary's statutory authority. Because the Court reverses the Court of Appeals' judgment that correctly invalidated that regulation, I dissent.

I

A

In its opinion today, the Court analyzes the facial validity of the Secretary's severity regulation by interpreting § 423(d)

in a manner that defeats the intent expressed through its language and structure. The Court isolates paragraph (1)(A) of § 423(d) and finds that the severity regulation does not conflict with the 1954 statutory definition of disability contained therein. Disregarding the fact that this definition was later amended to include paragraph (2) of § 423(d), the Court reaches a premature conclusion that the regulation "is not inconsistent with the statutory definition of disability." *Ante,* at 146. After thus reasoning that the "statutory definition of disability" is not a bar to the Secretary's severity regulation, the Court then characterizes paragraph (2)(A) as merely "limit[ing] the Secretary's authority to grant disability benefits, not to deny them."[1] *Ante,* at 148. This allows the Court to conclude that there is no reason for the Secretary to consider the vocational factors of age, education, and work experience listed in paragraph (2)(A) in cases where he already has determined that the claimant does not have a severe impairment.

The critical error in the Court's analysis is readily apparent when one considers the language introducing paragraph (2) of § 423(d). Although the Court purports to set forth § 423(d) (2)(A) in its opinion, *ante,* at 140, it fails to quote the key language from the statute. The concurring opinion likewise

---

[1] The Court implies that the statute limits the Secretary's ability to grant disability-insurance benefits but does not limit his ability to deny such benefits. This implication is inconsistent with the fact that the disability-insurance benefits program at issue here creates a statutory entitlement for those persons eligible under the statutory criteria. Section 423 begins by stating that every individual who is insured, is not of retirement age, has filed an application, and is disabled, "*shall* be entitled to a disability insurance benefit" during the time period deemed appropriate under the standards set forth in the statute (emphasis added). 42 U. S. C. § 423(a)(1) (1982 ed., Supp. III). The Court elsewhere takes note of the fact that claimants, such as respondent, who seek disability-insurance payments due to inability to continue working have contributed to the insurance program. *Ante,* at 140. As under any insurance program, a contributor to the plan is entitled to payment if he or she meets the agreed-upon terms for coverage.

presents an abridged version of the statute. See *ante,* at 155. Neither places the language that it does quote within its proper context.

Section 423(d) provides in relevant part:

"(1) The term 'disability' means —

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or

"(B) in the case of an individual who has attained the age of 55 and is blind . . . .

"(2) *For purposes of paragraph (1)(A)—*

"(A) An individual (except a widow, surviving divorced wife, widower, or surviving divorced husband for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

"(B) A widow, surviving divorced wife, widower, or surviving divorced husband shall not be determined to be under a disability (for purposes of section 402(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed

to be sufficient to preclude an individual from engaging in any gainful activity." 42 U. S. C. § 423(d) (1982 ed. and Supp. III) (emphasis added).

By employing the phrase "for purposes of paragraph (1)(A)" to introduce paragraph (2), Congress made clear that paragraph (2) serves as an annotation to paragraph (1)(A), *not* as an independent requirement, as the Court implies. The language and structure of § 423(d) plainly indicate that paragraph (2) is relevant at the time the determination is made under paragraph (1)(A), not afterwards. Paragraph (2), in effect, explains how to determine whether a claimant is unable "to engage in any substantial gainful activity" within the meaning of paragraph (1)(A).[2]

How the determination is to be made in most cases, including those brought by insured workers such as respondent Janet Yuckert, is set forth in paragraph (2)(A), whereas paragraph (2)(B) relates to the category of claims by surviving spouses of insured workers which is specifically excepted from paragraph (2)(A). Whether a claimant under (2)(A) has proved an "inability" to work "by reason of" a medical impair-

---

[2] This interpretation is strongly reinforced by 42 U. S. C. § 416(i). That section provides a definition of "disability" and "period of disability" for various other sections of the statute. It states in relevant part:

"(1) Except for purposes of sections 402(d), 402(e), 402(f), 423, and 425 of this title, the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months, or (B) blindness . . . . The provisions of paragraphs (2)(A), (2)(C), (3), (4), (5), and (6) of section 423(d) of this title *shall be applied for purposes of determining whether an individual is under a disability within the meaning of the first sentence of this paragraph in the same manner as they are applied for purposes of paragraph (1) of such section.*" (Emphasis added.) 42 U. S. C. § 416(i)(1) (1982 ed., Supp. III).

Clearly, Congress intended that paragraph (2)(A) of § 423(d) be applied for purposes of determining whether a claimant is under a disability within the meaning of paragraph (1)(A) of § 423(d).

ment for purposes of (1)(A) depends upon whether the impairment limits the worker to such an extent that he is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any [other work]."

A straightforward reading of §§ 423(d)(1)(A) and (2)(A) indicates that the claimant must establish that he has an impairment, that it is medically determinable, that it meets the duration requirement, and that it is severe enough to be disabling within the terms of the statute so as to render him eligible for benefits. Paragraph (1)(A) does not indicate how the Secretary is to assess whether any established medical impairments meet the statutory severity standard. Paragraph (2)(A), however, provides that guidance.

Under paragraph (2)(A), if the claimant is able to do his previous work, the Secretary, of course, need not consider his age, education, and work experience. In such a case, the medically determinable impairment is automatically deemed nonsevere within the meaning of the Act. If, however, the claimant cannot perform his past work, the Secretary then must inquire into the severity of the impairment or combination of impairments. He is to determine whether, in light of the claimant's age, education, and work experience, the impairment is so severe that the claimant cannot engage in substantial gainful work.

A comparison of this process to that set forth in paragraph (2)(B) leaves no doubt whatsoever that consideration of the vocational factors is a key feature of the process in evaluating claims under paragraph (2)(A). In paragraph (2)(B), Congress authorized the Secretary to deny benefit claims by surviving spouses based on medical evidence alone. That paragraph specifies that the Secretary may promulgate listed severity levels of impairments at which an individual cannot engage in any gainful activity, and may deny benefits in such

cases simply by comparison to this list.[3] If Congress had intended to authorize the Secretary to deny benefits in that same manner in disability claims under paragraph (2)(A), without consideration of age, education, or work experience, it would have included the same language in paragraph (2)(A) that it used in paragraph (2)(B).

## B

The § 423(d)(2)(A) inquiry furthers the purpose of the disability-benefits program by ensuring an individualized assessment of alleged disability in cases of insured workers. The inquiry takes into account the fact that the same medically determinable impairment affects persons with different vocational characteristics differently. A relatively young, well-educated, and experienced individual who can no longer perform his past work due to a medical impairment may be able to transfer his skills to another job and perform substantial gainful work. That same medical impairment may have a much greater effect on a person's ability to perform substantial gainful work if the person is of advanced age and has minimal education and limited work experience. Thus, a particular medical impairment may not be disabling for the first individual while it could be for the second.

Despite the clarity of the statutory language and the purpose of individualized disability determinations, the Secretary has promulgated as step two of his step-evaluation process the severity standard set forth in 20 CFR § 404.1520(c)

---

[3] In the regulations pertaining to surviving spouses, the Secretary explains to claimants: "To determine whether you are disabled, we consider only your physical or mental impairment. We do not consider your age, education and work experience." 20 CFR § 404.1577 (1986). He further explains that the claimant will be found to be disabled only if he is not doing any substantial gainful activity and his impairment meets the requirements of an impairment listed in an accompanying appendix. See § 404.1578; see also *Hansen* v. *Heckler*, 783 F. 2d 170, 172 (CA10 1986) (statutory criteria for disability benefit claims by widows are more restrictive than standard applicable to claims by insured wage earners).

(1986). Because that regulation prohibits agency adjudicators from considering a claimant's age,[4] education, and work experience in cases where the claimant cannot perform his past work, the regulation is invalid on its face.[5]

---

[4] Perhaps the most disturbing result of the step two severity regulation is the disproportionate effect that its application has had on claimants in the older age categories. Some of the *amici* express concern that the Court realize that the instant case, which involves a claim by a relatively young and well-educated individual, is not typical of cases in which step two has operated to deny benefits to eligible claimants. See Brief for American Diabetes Association et al. as *Amici Curiae* 9, n. 5, 12–13; Brief for American Association of Retired Persons as *Amicus Curiae* 16, n. 13. A survey of a significant number of reported cases reveals that in those cases the claimants whose step two severity denials were reversed by the courts were individuals age 50 or older. See *id.*, at 16, n. 12. In one of its earliest statements as to why the vocational factors must be considered in making disability determinations, the Secretary explained that "[t]he aging process makes itself felt with respect to healing, prognosis, physiological degeneration, psychological adaptability and, in consequence, on vocational capacity." 1955 Disability Freeze State Manual § 325B. Noting that chronological age, however, was only "some indication of the individual's physiological age," the Secretary specified that "the impact of the aging process upon the specific individual will have to be considered in connection with the particular impairment claimed to prevent substantial gainful activity." *Ibid.* Elimination of the age factor from the disability calculus at step two inevitably diminishes the reliability of the determinations at that step.

[5] Although the Court peremptorily finds "no basis" for holding that the severity regulation is inconsistent on its face with the statute, *ante*, at 147, no less than five Federal Courts of Appeals, including the court below, have found the same blatant contradiction in the plain language that I find. See *Brown* v. *Heckler*, 786 F. 2d 870, 871 (CA8 1986) (citing Courts of Appeals that have "point[ed] out that while the provision [in the severity regulation] explicitly requires the Secretary to disregard the claimant's age, education, and work experience, the Act expressly requires those factors to be taken into account when determining disability"); *Hansen* v. *Heckler*, 783 F. 2d, at 174 ("regulation on its face . . . conflicts with the statutory directive" which is "to consider a claimant's ability both to perform past work and, given individual vocational factors, to engage in other work"); *Johnson* v. *Heckler*, 769 F. 2d 1202, 1212 (CA7 1985) ("[O]n its face, the step two severity regulation conflicts with

The reasoning upon which the Court relies to support its contrary conclusion is unconvincing. Rather than analyze the severity regulation's validity in light of the actual language and purpose of the statute, the Court relies, *ante*, at 146, on a description of the Act's definition of disability set forth in one of its own earlier opinions. See *Heckler* v. *Campbell*, 461 U. S. 458, 459–460 (1983) ("The Social Security Act defines 'disability' in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace"). It is important to note, however, that the Court quotes only part of that description. Based on this abbreviated description, the Court views the statute as requiring a "functional approach to determining the effects of medical impairments," *ante*, at 146, and regards the regulation as adopting a similar approach.

Merely because both the statute and the regulation require analysis of the effect of the medical impairments on the claimant's ability to work does not mean, however, that the two are consistent in all respects. Moreover, examination of the description of the statutory scheme, as set forth in *Heckler* v. *Campbell*, reveals that the general declaration upon which the Court relies was supported with a discussion of the particulars of the statute that included *both* paragraphs (1)(A) and (2)(A) of § 423(d). By not including § 423(d)(2)(A) at this step of its analysis, however, the Court avoids the impossible task of explaining how the statutory scheme described in *Campbell* and the regulatory scheme set forth in the severity regulation can represent "precisely" the same approach when

the Social Security Act's purposes and the plain language of the statute's definitions of disability"), cert. pending *sub nom. Bowen* v. *Johnson*, No. 85–1442; *Baeder* v. *Heckler*, 768 F. 2d 547, 553 (CA3 1985) (severity regulation cannot be analyzed "except according to its plain language and the manner in which the Secretary uses it"; "[a]s it stands, . . . [it] is inconsistent with the Social Security Act, and therefore, is invalid"). Obviously, these cases do not support the assertion in the concurring opinion that the courts rested their judgments on "frustration . . . in dealing with the Secretary's application of step two." *Ante*, at 157.

the statutory scheme includes consideration of vocational factors and the regulation does not.

While still focusing on the comparison between the regulation and paragraph (1)(A) read in isolation, the Court states: "If the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs [apparently referring to 20 CFR § 404.1521 (1986)],[6] by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Ante*, at 146. Although I agree that a claimant who can perform most jobs is not disabled under the Act, I do not agree with the Court's implication that the statute authorizes the Secretary to review the medical evidence in a case and, solely on the basis of that information, to determine the claimant's ability to "perform most jobs." Under that interpretation of the statute, the agency adjudicators would decide whether a claimant covered by § 423(d)(2)(A) could perform the listed basic-work activities, including responsiveness to supervision and adaptability to change in the workplace, without taking into account the claimant's age, education, and work experience. I simply cannot read the statutory language of §§ 423(d)(1)(A)

---

[6] In § 404.1521, the Secretary explains what he means by "an impairment that is not severe":

"(a) *Non-severe impairment(s).* An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

"(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary *to do most jobs.* Examples of these include—

"(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

"(2) Capacities for seeing, hearing, and speaking;

"(3) Understanding, carrying out, and remembering simple instructions;

"(4) Use of judgment;

"(5) Responding appropriately to supervision, co-workers and usual work situations; and

"(6) Dealing with changes in a routine work setting." (Emphasis added.)

and (2)(A) as authorizing the Secretary to permit that determination to be made in such a void.

Even if a medical impairment affected different individuals' abilities to perform such functions to the same extent, regardless of age, education, and work experience, there is no guidance in the severity regulation as to what constitutes a "significant" limitation on the ability, for example, to use judgment or to adapt to changes in work conditions, or as to how the degree of limitation caused by a medical impairment on such functions is to be determined based solely on medical evidence. Nor does the regulation explain whether the claimant must be able to perform a few, most, or all of the § 404.1521 *"[e]xamples"* of "basic work activities" in order to be found capable of performing "most jobs." The concurring opinion appears to assume that the Secretary can deny benefits at that stage only if a claimant can perform all the basic work activities listed without any significant limitations. *Ante,* at 155–156. Assuming this to be true, the regulation does not recognize that less than "significant" limitations on several of the activities in combination could equate with an overall significant limitation on the ability to perform most jobs. In sum, the regulation authorizes disability determinations to be made in a manner inconsistent with the statutory mandate. Congress clearly intended to prohibit these assessments from being made in a vacuum when it specified in § 423(d)(2)(A) that a claimant's age, education, and work experience be taken into account in determining the effect of his medical impairment on his ability to work.[7]

---

[7] The Court is correct in asserting that "[i]f a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits." *Ante,* at 148. I disagree, however, with its conclusion, drawn from that assertion, that "[i]n such a case, there is no reason for the Secretary to consider the claimant's age, education, and work experience." *Ibid.* This reasoning begs the very question presented for resolution today—whether the severity of a claimant's medical impairment can be discerned without reference to the individual's age, education, and work experience. The statute expressly answers this question in the negative.

There simply is no support in the language of the statute for the proposition that the Secretary can create his own definition of "severe impairment" for purposes of disability determinations in disabled-worker cases and exclude consideration of factors that Congress directed be considered. Whereas the Court perceives "no reason for the Secretary to consider the claimant's age, education, and work experience" in cases where a premature showing of nonseverity has been made, *ante*, at 148, there is one compelling reason for the Secretary to consider those factors—the unambiguous language of the statute directs that he do so.

## II

### A

An examination of the legislative history of § 423(d) provides strong additional support for respondent's position. The disability definition in § 423(d) has its roots in another statutory provision that was first enacted in 1952. In that year, Congress amended the Social Security Act in part to guarantee that the insured status of workers would not be adversely affected if they were permanently and totally disabled for periods of time prior to retirement. As part of this amendment, Congress added to the Act its § 216(i), which contains the definition of "disability" and "period of disability" for purposes of that program. 66 Stat. 771, 42 U. S. C. § 416(i) (1952 ed.). In 1954, Congress replaced those definitions with slightly different ones contained in a new § 216(i). 68 Stat. 1080, 42 U. S. C. § 416(i) (1952 ed., Supp. IV). When Congress amended the Act in 1956, in part to establish a program to provide benefits for certain insured disabled individuals prior to retirement, it adopted the § 216(i) definition for purposes of the new program. It added § 223 to the Act which set forth the terms of the new program and included a definition of "disability" nearly identical to that set forth in

§ 216(i).[8] In 1965, Congress amended that definition to specify that the impairment must be expected to last for not less than 12 months. 79 Stat. 367.

The statutory definition of disability again was a focus of congressional attention in 1967, when the current structure of the definition was adopted. One of the express aims of the Social Security Act Amendments of that year was to provide a more detailed definition of "disability" for purposes of the disability-insurance benefits program. The definition was set forth in a new § 223(d). 81 Stat. 868. The congressional Reports explain:

> "Paragraph (1) of the new section 223(d) states the basic definition of the term 'disability' exactly as it [was] stated in existing law . . . .
>
> "Paragraph (2)(A) of the new section 223(d) provides that in applying the basic definition (except the special definition for the blind, and except for purposes of widow's or widower's insurance benefits on the basis of disability), an individual shall be determined to be under a disability only if his impairment or impairments are so severe that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the general area in which he lives, or whether a specific job vacancy exists, or whether he would be hired if he applied for work." S. Rep. No.

---

[8] That definition stated:

"The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required." 70 Stat. 815–816, 42 U. S. C. § 423(c)(2) (1952 ed., Supp. IV).

744, 90th Cong., 1st Sess., 263–264 (1967); H. R. Rep. No. 544, 90th Cong., 1st Sess., 163 (1967).[9]

Congress intended that this provision "clarify and amplify the definition of 'disability' for purposes of the social security program." S. Rep. No. 744, at 263; H. R. Rep. No. 544, at 163.

Congress felt the need to clarify the definition of disability because, in its view, the rising cost of the disability-insurance program was due in part to court decisions that had interpreted the definition too broadly. S. Rep. No. 744, at 46–47. In particular, Congress was concerned with decisions that had required agency adjudicators to focus on a narrow geographic area in determining whether a claimant could perform substantial gainful activity and to consider whether there existed specific job vacancies for which the claimant had a reasonable opportunity to be hired. *Id.*, at 47–48. See, *e. g.*, *Tigner* v. *Gardner*, 356 F. 2d 647 (CA5 1966); *Wimmer* v. *Celebrezze*, 355 F. 2d 289 (CA4 1966). Congress also noted that questions had arisen about what kind of medical evidence was necessary to "establish the existence and severity of an impairment," and about what current work performance constituted "substantial gainful activity." S. Rep. No. 744, at 48.

The new language in § 423(d)(2)(A) was aimed at answering these questions. Congress made it clear that medical factors, and not local job conditions, are the primary focus in disability cases. It tempered the new restrictiveness of the statute, however, by specifying that consideration of the vocational factors is a necessary component of the disability determination in all cases where a claimant is not working and the medical impairment is not of a level presumed to be disabling, except those expressly exempted from § 423

---

[9] Section 223(d)(2)(A) was in the original House bill. Although it was in the bill recommended out of Committee in the Senate, it was deleted by amendment on the floor. The Conference Committee restored the provision and the Senate accepted it. H. R. Conf. Rep. No. 1030, 90th Cong., 1st Sess., 51–52 (1967).

(d)(2)(A). Congress summarized its view of the disability determination process as follows:

"In most cases the decision that an individual *is disabled* can be made solely on the basis of an impairment, or impairments, which are of a level of severity presumed (under administrative rules) to be sufficient so that, in the absence of an actual demonstration of ability to engage in substantial gainful activity, it may be presumed that the person is unable to so engage because of the impairment or impairments. The *language which would be added by the bill specifies the requirements which must be met* in order to establish inability to engage in substantial gainful activity *for those people with impairments to which the presumption mentioned above does not apply*" (emphasis added). S. Rep. No. 744, at 49.

Congress nowhere indicated an intention to authorize the Secretary to *deny* claims by insured workers not performing previous work based on medical factors alone.

Congress' intention that the vocational factors be considered in claims by insured workers such as respondent is further illustrated by comparing Congress' own description of this process with its description of the simpler process it authorized in cases involving claims by disabled surviving spouses.[10] It was explained:

"The bill would also provide benefits . . . for certain disabled widows . . . and disabled dependent widowers under a test of disability that is somewhat *more restrictive* than that for disabled workers and childhood disability beneficiaries. The determination of disability in the case of a widow or widower *would be based solely on the level of severity of impairment.* Determinations in disabled widow and widower cases *would be made without*

---

[10] Paragraph (2)(B), which sets forth the method of determining disability eligibility for disabled surviving spouses, was also added by the 1967 Amendments. 81 Stat. 868.

> *regard to nonmedical factors such as age, education,*
> *and work experience, which are considered in disabled*
> *worker cases"* (emphasis added). *Id.*, at 49–50.

See also H. R. Conf. Rep. No. 1030, 90th Cong., 1st Sess., 52 (1967). Clearly, the nonmedical factors were considered by Congress to be a key ingredient in disability assessments under § 423(d)(2)(A).

Out of this legislative history surrounding the enactment and amendment of the current disability definition, the Court grasps at three straws. First, it quotes the legislative Reports that accompanied the 1954 amendment to § 216(i) of the Act. *Ante*, at 147. The record is clear, however, that the 1967 Amendments to § 223 of the Act represent a decision by Congress to set forth new standards governing the severity assessment of medical impairments.

Second, the Court relies upon language from the Senate Report that accompanied the 1967 Amendments. Once again, however, the context is incomplete, for the Court quotes only the remark concerning the "predominant importance of medical factors." *Ante*, at 148. There is no question that Congress intended to emphasize that a claimant must produce adequate medical evidence to support his showing of a severe medically determinable impairment. Such an intent, however, is not at odds with Congress' other clear aim of ensuring that an insured worker's age, education, and work experience remain relevant factors in the disability determination.

Finally, the Court quotes the 1967 Senate Report's summary of the overall disability evaluation process which, as the Court points out, contemplated a sequential evaluation. *Ante*, at 148–149. Expressly included in that sequential evaluation, however, is the consideration of the vocational factors in cases where an insured worker cannot do his previous work.[11]

---

[11] At various points in its opinion, the Court implies that the issue before the Court is the validity of the Secretary's sequential evaluation process. Respondent, however, has not challenged the validity of that process. I agree that Congress foresaw that there would be various steps in the dis-

## B

To avoid the force of the legislative history contemporaneous with the enactment of §§ 423(d)(1)(A) and (2)(A),[12] the Court seeks refuge in § 4(b) of the Social Security Disability Benefits Reform Act of 1984, 98 Stat. 1800. It claims that by this provision, Congress approved the validity of the severity regulation. Yet § 4(b), on its face, says nothing of the severity level necessary to meet the eligibility requirements. See *ante*, at 149–151. According to that provision, in making a determination of the medical severity of a claimant's impairment or impairments, the Secretary cannot simply consider each impairment in isolation but rather must consider the combined effect of the impairments. There thus is no "approval of the severity regulation," as the Court would say, *ante*, at 150, in the language of that provision.

The legislative history of the 1984 Act also does not stand as an endorsement of the severity regulation. Each of the three congressional Reports contains a brief description of the general disability-determination process. In each of these descriptions, the preliminary steps of the Secretary's step-evaluation process were characterized somewhat differently. The Senate Report, see *ante*, at 151, explained that the new provision requiring consideration of combined impairments would not authorize a departure from the sequential evaluation process. Omitted from the heart of the Court's quotation, however, is the Report's express incorporation by reference of the 1967 interpretation. The Report

---

ability determination process at which a claimant could be deemed ineligible. In *Heckler* v. *Campbell*, 461 U. S. 458 (1983), the Court upheld a significant part of the sequential evaluation process, but step two was not before it in that case and in fact was not even mentioned in the description of the current process.

[12] The only substantive amendment to these sections since 1967 was in 1983 when § 423(d)(2) was amended to substitute "widower, or surviving divorced husband" for "or widower" throughout that paragraph. 97 Stat. 117.

explained: *"As the Committee stated in its report on the 1967 amendments,* an individual is to be considered eligible 'only if it is shown that he has a severe medically determinable physical or mental impairment or impairments.'" S. Rep. No. 98–466, p. 22 (1984) (emphasis added). Reference back to the congressional views supporting the 1967 Amendments evinces an intent to adhere to a consistent interpretation of that provision. For the reasons discussed above, the 1967 view necessarily considered the vocational factors to be a critical part of a disability determination in cases where the insured worker cannot do his previous work. This view stands in contradiction to the Senate Report's apparent suggestion that the Secretary can deny benefits in such cases based on medical evidence alone. Hence, the Senate's discussion of the disability determination process is ambiguous at best.

The House Report accompanying the 1984 Act reflects dissatisfaction with the step two severity regulation. According to the House Report, under that process, "a determination that a person is not disabled may be based on a judgment that the person has no impairment, or that the impairment or combination of impairments are slight enough to warrant a presumption that the person's work ability is not seriously affected." H. R. Rep. No. 98–618, p. 8 (1984). While stating that it did not wish to undermine the Secretary's entire step-evaluation process, the House Report nevertheless expressed reservations about the "slight impairment" approach as a threshold assessment at step two. It explained:

> "[T]he committee is concerned that the consideration of eligibility for disability benefits be conducted using criteria that clearly reflect the intent of Congress that all those who are unable to work receive benefits. It is of particular concern that the Social Security Administration has been criticized for basing terminations of benefits solely and erroneously on the judgment that the person's medical impairment is 'slight,' according to very

strict criteria, and is therefore not disabling, without making any further evaluation of the person's ability to work." *Id.*, at 7.

After stating that it did not wish to eliminate the sequential evaluation process, it continued:

"*However*, the committee notes that the Secretary has already planned to re-evaluate the current criteria for non-severe impairments [*i. e.* step two], and urges that all due consideration be given to revising those criteria to reflect the real impact of impairments upon the ability to work" (emphasis added). *Id.*, at 8.

Hence, not only did the House Report read the current step-evaluation process as setting forth a "slight impairment" standard that was less onerous than the standard discussed in the Senate Report, but it also expressed concern that even that threshold step did not provide the necessary individualized consideration of a disability claim to determine the actual impact of the impairment on the individual's ability to work. The House thus indicated a desire not to upset the Secretary's step-evaluation process, but it did not approve the step two severity regulation.

The Conference Report adopted the position set forth in the House Report. It referred to the Secretary's "plan to reevaluate the current criteria for nonsevere impairments" and to the expectation that the Secretary would apprise Congress of the results of that evaluation. H. R. Conf. Rep. No. 98–1039, p. 30 (1984). Moreover, the description of the sequential evaluation process in the Conference Report is even more lenient than the House Report. The conferees approved of the flexibility and efficiency resulting from a threshold disability determination but indicated that

"a determination that an individual is not disabled may be based on a judgment that an individual has no impairment, or that the medical severity of his impairment or combination of impairments is slight enough to warrant a

presumption, even without a *full* evaluation of vocational factors, that the individual's ability to perform [substantial gainful activity] is not seriously affected" (emphasis added). *Ibid.*

The conferees stated that the current sequential evaluation process permitted that determination and they did not intend to eliminate the process. *Ibid.* This characterization of the process as permitting less than a *full* evaluation of the vocational factors indicates that the appropriate standard would include an implicit or limited analysis of vocational factors. Because the agency's regulation states expressly that vocational factors will not be considered, however, the conferees' statement can serve only as a description of what they believed a valid threshold standard would be, rather than as a description of the current severity regulation.

The ambiguity in the congressional references to step two is understandable due to the fact that Congress did not have before it the question of that regulation's validity. Examination of the totality of the legislative history of the 1984 Act reveals that Congress limited its focus to several major problems in the Social Security system. These problems included the standard of review for termination of disability benefits, for evaluating pain, for ensuring consideration of multiple impairments, and for evaluating the effect of mental impairments on ability to work.

In sum, Congress acknowledged that the Secretary was in the midst of reevaluating the severity regulation and indicated its willingness to await the Secretary's results rather than to address the matter in the midst of the overwhelming legislative task it already faced regarding the matters properly before it. The brief remarks about the step-evaluation process simply cannot be read as an endorsement of the facial validity of the severity regulation. These congressional comments in 1984 cannot outweigh the clear language of §§ 423(d)(1)(A) and (2)(A) and the legislative history of those provisions.

## III

The Court makes much of the Secretary's broad authority to prescribe standards for applying the Social Security Act and the limited nature of our review in light of that authority. *Ante*, at 145. This Court has recognized, however, that "[c]ourts need not defer to an administrative construction of a statute where there are 'compelling indications that it is wrong.'" *Espinoza* v. *Farah Mfg. Co.*, 414 U. S. 86, 94–95 (1973), quoting *Red Lion Broadcasting Co.* v. *FCC*, 395 U. S. 367, 381 (1969). When a regulation is facially inconsistent with the statute, the administrative construction of the statute is necessarily wrong and there is no need to consider further the position of the agency. The Secretary's interpretation of the statute as reflected in his regulation "cannot supersede the language chosen by Congress." *Mohasco Corp.* v. *Silver*, 447 U. S. 807, 825 (1980). Unlike the situation presented recently in *Lukhard* v. *Reed*, 481 U. S. 368 (1987), Congress unambiguously specified its intent when enacting § 423(d) that the vocational factors be considered in determining disability eligibility in cases such as respondent's. The efficiency and reliability interests that the Court attributes to the Secretary,[13] *ante*, at 151–152, cannot outweigh clear congressional intent.

The Secretary attempts to avoid the facial contradiction between his severity regulation and the statute by interpreting the regulation as representing only a *de minimis* threshold standard. The Secretary apparently has recognized finally what every Federal Court of Appeals has concluded— application of a threshold severity regulation that is greater

---

[13] The extensive litigation concerning the meaning of step two belies the assertion that it fosters efficiency. See *ante* at 145, n. 4. JUSTICE O'CONNOR describes the evidence indicating that step two has proved to be a very unreliable indicator of disability eligibility. See *ante*, at 157–158.

While a clearly drafted regulation encompassing a valid preliminary screening standard undoubtedly could increase efficiency and reliability, the current step two advances neither.

than *de minimis* is invalid under the terms of the statute. See concurring opinion *ante*, at 156, and nn. 1 and 2.

The Court explains that it has not considered the validity of the Secretary's application of the regulation, *ante*, at 150, n. 8, although it appears to adopt the "slight" impairment interpretation. See *ante*, at 153. In her concurring opinion, JUSTICE O'CONNOR expressly imposes on the severity regulation a narrowing interpretation that permits only a *de minimis* threshold standard.

I cannot, however, join that approach in this case. I agree with respondent's position that, although a *de minimis* standard that implicitly draws the vocational factors into the disability determination may be permitted under the statute, this Court cannot resolve that question on the record in this case. Such a standard was not applied by the agency adjudicators who reviewed respondent's claim, and there is no record evidence as to the Secretary's application of a *de minimis* standard subsequent to the 1978 adoption of the sequential evaluation. Indeed, JUSTICE O'CONNOR aptly demonstrates that even if the Secretary is currently attempting to readopt the pre-1978 slight impairment standard, that standard is entirely inconsistent with the interpretation in effect at the time respondent's claim was considered by the agency adjudicators. I agree with JUSTICE O'CONNOR that the evidence suggests that step two has been "applied systematically in a manner inconsistent with the statute." *Ante*, at 157; see also *Stone* v. *Heckler*, 752 F. 2d 1099 (CA5 1985). Little weight can be given to views of an agency when the views themselves are inconsistent. See *United Housing Foundation, Inc.* v. *Forman*, 421 U. S. 837, 858, n. 25 (1975).

Whether a *de minimis* threshold standard is authorized under the statute is not before this Court. The regulation on its face simply does not describe a standard that incorporates into the threshold step an implicit consideration of the vocational factors. The language of step two does not represent

a standard that denies disability claims only if the medical impairment is so minimal that no set of vocational factors, even if fully considered, could result in a finding of disability. Yet, in order to be valid under the terms of the statute, any *de minimis* threshold step would have to adopt such a standard. It would have to ensure that it did not preclude an individual evaluation of vocational factors at a later stage[14] and a finding of disability if they affect the ultimate determination of that issue.

I agree with the approach of the Court of Appeals in this case. Contrary to this Court's implications, *ante*, at 147, that court did not address the question whether the statute authorizes a threshold showing of medical severity. The Court of Appeals addressed only the facial validity of the severity standard in step two of the sequential evaluation process. It expressly declined to consider whether other threshold severity standards, such as a *de minimis* standard, would be authorized under the statute. See *Yuckert* v. *Heckler*, 774 F. 2d 1365, 1369, n. 6 (CA9 1985). Invalidating step two does not prohibit the adoption of a threshold screening stand-

---

[14] Application of a greater than *de minimis* threshold severity standard can render the step-evaluation process internally inconsistent by denying benefits to claimants who would be found to be disabled under the criteria of a more advanced step in the sequential evaluation process. For example, under the medical-vocational guidelines that are applied at step five, the only impairments that will never be found to be disabling regardless of age, education, and work experience, are those that do not prevent the claimant from engaging in heavy work and do not impose nonexertional restrictions. Yet persons who are unable to perform heavy work have been found to be not disabled at step two at the administrative level, and the courts have had to reverse those initial findings. See Brief for American Diabetes Association et al. as *Amici Curiae* 8, 13–14 (profiling cases). The Secretary also has argued in the past that even if a claimant's impairment meets the requirements in the Listing of Impairments used at step three of the process and would have been found to be disabling at that step, that fact is irrelevant if the claimant is found to be not disabled at the threshold step two standard. See *Williamson* v. *Secretary of Health and Human Services*, 796 F. 2d 146, 150 (CA6 1986).

ard to eliminate frivolous claims at an early stage in the process if that standard takes into account vocational factors as required by the statute. Adoption of such a standard should take place through the administrative procedures required under the Act for the adoption of new regulations. See 42 U. S. C. § 421(k)(2) (1982 ed., Supp. III). Further agency interpretations of the invalid regulation are of no value. They cannot alter the fact that the regulation is facially invalid.

## IV

Because the Secretary's regulation directly conflicts with the statutory language set forth by Congress and because it plainly is inconsistent with the legislative history, it is highly inappropriate for this Court to permit the Secretary to continue to enforce that regulation. I dissent.