**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 8 1999**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

BOBBY C. SIMS,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 98-7078
(D.C. No. 96-CV-652-B)
(E.D. Okla.)

---

ORDER AND JUDGMENT  *

---

Before **PORFILIO** , **BALDOCK** , and **HENRY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Bobby C. Sims appeals from the district court's order affirming the decision of the Commissioner of Social Security. In that decision, the Commissioner denied claimant's applications for disability insurance benefits and supplemental security income benefits made under Titles II and XVI of the Social Security Act. See 42 U.S.C. § 423; 42 U.S.C. § 1382. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and affirm.

Two issues are presented for review. The first is whether the administrative law judge's (ALJ) determination that claimant's allegations of disabling pain and limitations were not fully credible is supported by substantial evidence. The second is whether the Commissioner met his burden to establish that claimant retained his ability to do light work on a reasonably regular basis given the number of claimant's medical visits between 1990 and 1994 and a vocational expert's testimony that, hypothetically, an employer would not retain a person who is absent from work for medical reasons three or more times per month.

## I. Legal standards

Our review is limited to determining whether the ALJ's decision is supported by substantial evidence on the whole record and comports with relevant legal standards. See Casias v. Secretary of Health & Human Serv., 933 F.2d 799, 800-01 (10th Cir. 1991).

Claims for disability benefits and supplemental income payments are evaluated according to the five-step sequential process set out in 20 C.F.R. §§ 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137 (1987). "Credibility determinations are peculiarly the province of the finder of fact and we will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). A finding of disability based on complaints of pain "requires more than mere inability to work without pain. . . . [The pain must be] so severe . . . as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir. 1986) (quotation omitted). Further, 42 U.S.C. § 423(d)(5)(A) requires that a pain-producing impairment "must be proven by objective medical evidence before an agency decision maker can find a claimant disabled by pain." Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987).

## II. Discussion

### A. Credibility

In this case, the ALJ determined at step five that claimant has a severe impairment that precluded him from performing his past relevant work, but that he retained the ability to do light work. The ALJ found that, although claimant has chest pain of an unknown etiology that causes

> significant vocationally relevant limitations[,] . . . claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, the claimant's own description of his activities and life style, and the record as a whole.

Appellant's App. at 388. The record is replete with claimant's complaints of pain, yet none of claimant's treating physicians reported that the pain was disabling, and the medical records indicate that the pain is episodic and of short duration. A review of the medical record shows that a majority of the episodes occurred at night, were quickly resolved, and were not triggered by exertion or work-related activity. Plaintiff's treating physicians could not identify any objective medical impairments that would reasonably produce the disabling pain claimant complained of, even though several kinds of diagnostic tests were administered on various occasions.

At least three different health care providers noted in the record that claimant's complaints were not supported by objective medical findings. For example, on March 11, 1990, a nurse or physician noted that claimant was "very concerned about possible health problems. Get a sense he wants something to be wrong." Id. at 349. On March 7, 1991, a doctor stated that claimant was "insisting in the past year that he has had heart disease which has not been documented by workup." Id. at 230. On April 14, 1994, his treating physician

noted that claimant "wants to have a diagnosis that will give legitimacy to all his medical complaints and problems. Unfortunately, I am unable to do that. . . . He has no real incentive to improve his situation so long as these law suits are active." Id. at 518. Although claimant testified that he has "log jamming" in his arteries caused by sickle cell trait, id. at 660 & 665, the medical expert at the hearing testified that "log jamming" is a symptom of sickle cell anemia, but not of sickle cell trait, which causes no symptoms unless the patient is in a situation involving a "real lack of oxygen." Id. at 682.

Claimant's complaints of pain were internally inconsistent. His most frequent emergency room visits and hospitalizations for diagnostic tests occurred in 1990. His last emergency room/hospital visit was apparently on September 18, 1994, id. at 508-14, and the last record of a doctor visit for chest pain was in December 1994, id. at 638. In his disability application prepared on March 19, 1991, he stated that he had a sickle cell "crisis at least once a month," but that he had "no problems" with social contacts or driving and that he did his own household maintenance. Id. at 81-86. On May 30, 1991, he stated that daily he looked for jobs, played dominoes with friends, visited a friend at his shop, did housework, and went to the drag races on Fridays. Id. at 89-93. At his hearing held on December 12, 1991, claimant stated that he had four or five "attacks" a month lasting from one to three or four hours, id. at 42-3, but that when he was

not experiencing an attack, he did not have any problems. Id. at 44. He spent much of his time looking for jobs. Id.

In contrast, at his hearing on January 11, 1996, he stated that he had chest pain four or five times *a day*, that the pain lasted from an hour to *eight or ten hours*, and that most of the time he *hurt through the night*. See id. at 667-70. Although claimant testified that his daily activities had not changed much since he last worked in August of 1990, see id. at 667, he now stated that he couldn't do anything but stay at home, rest, watch television and occasionally do very light housekeeping for a few minutes. See id. at 667-70. Thus, during the time claimant was at the peak of his emergency room and doctor visits, he reported being able to function normally when not having an episode, yet when he was apparently doing so well he no longer needed to see the doctor or go to the emergency room, he was virtually bedridden on a daily basis with complaints of disabling pain.

Claimant also has failed to follow doctors' instructions, which is another factor in determining credibility. See Luna v. Bowen, 834 F.2d at 165. In January 1990, he was advised to stop smoking, see Appellant's App. at 174, yet in June 1992, he was still smoking a pack of cigarettes per day, see id. at 283. He was advised to undertake an exercise program to reduce his weight and improve his condition in January 1990, see id. at 187, and yet he apparently has never done

so and his weight has stayed at between 198 and 208 pounds, see id. at 94, 117, 405, 518. Although to treat his chest pain, Dr. Stewart "attempted to make arrangements for him to see Dr. Russell for injection of his costochondral junction[,] . . . every time the appointment was made he would always either not show up or cancel it because the symptoms were gone." Id. at 519. After a careful review of the whole record, we conclude that the ALJ's credibility finding is supported by substantial evidence.

B. Residual functioning capacity

Claimant argues that the fact that he visited the emergency room, was hospitalized, and visited the doctor's office so many times during 1990-94 proves that he did not have a residual functioning capacity (RFC) to do light work. His argument is based on the testimony of Russell Bowden (the vocational expert), and the definition of RFC. The Commissioner defines RFC as

> an assessment of an individual's ability to do sustained work-related
> physical and mental activities in a work setting on a regular and
> continuing basis. A 'regular and continuing basis' means 8 hours a
> day, for 5 days a week, or an equivalent work schedule.

S.S.R. 96-8P, 1996 WL 374184, *1. Mr. Bowden testified that if claimant's pain was so severe that it kept him from going to work three or more times a month, he could not hold competitive employment because employers generally only allow one to two days of sick leave per month. See Appellant's App. at 697-8. According to claimant, since the record shows that he sought medical assistance

more than three times per month, that is conclusive proof that he was unable to work on a regular and continuous basis. He argues that the ALJ improperly discounted all of the medical record because of his conclusion that claimant was not credible and that he "pointed to nothing to prove that Mr. Sims could have worked during this period." Appellant's Br. at 22.

Claimant misinterprets the import of the ALJ's credibility determination. In finding that claimant's claims of disabling pain were not credible, the ALJ did not ignore the medical record or the opinion of the vocational expert. He simply concluded that, even if claimant did seek medical help on those occasions, either because of the timing, duration, or actual (as opposed to claimed) severity of the episodes, claimant still could have performed light work on a regular and continuing basis based upon the medical records. His conclusion that claimant has an RFC to do light work is supported by the whole record.

The judgment of the United States District Court for the Eastern District of Oklahoma is **AFFIRMED** .

Entered for the Court


John C. Porfilio
Circuit Judge

-8-