259 F.Supp.2d 945 (2003)
Evelyn CRUDUP, Plaintiff,
v.
Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.
No. 4:02 CV 2 DDN.
United States District Court, E.D. Missouri, Eastern Division.
March 12, 2003.
*946 Robert A. Crowe, Don J. Derse, Crowe and Shanahan, St. Louis, MO, for Plaintiff.
Henry J. Fredericks, Asst. U.S. Attorney JoAnne B. Barnhart, Office of U.S. Attorney, St. Louis, MO, for Defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying plaintiffs application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Oral argument was heard on March 6, 2003.

I. BACKGROUND

A. Administrative record
Plaintiff, who was born on July 12, 1935, filed her application for disability insurance benefits on October 28, 1999, alleging that she became disabled on July 31, 1997. (Tr. at 49-51.) In a Social Security Administration (SSA) Disability Report, she indicated that arthritis, diabetes, and hypertension limited her ability to work at her position as a customer service representative for the City of St. Louis. She noted that the position did not involve any lifting, stooping, kneeling, crouching, crawling, or handling big objects but required sitting for 7 hours per day, which the arthritis made painful. In an SSA Work History Report, she indicated that on a daily basis in the customer service job she walked for half an hour and sat for 7.5 hours. (Tr. at 59-60, 73.)
Dr. Jerome Williams has been plaintiffs treating physician for many years. In 1982, plaintiff complained to him of pain in her left arm and elbow. She weighed over 220 pounds and had high blood pressure (BP). In 1987, she complained of arthritis in her knees and was having trouble tolerating Motrin and another medication. In 1991, she complained of or had bursitis in her shoulder; he prescribed Naprosyn. She also complained of cramping hands and "aching all over." Her blood sugar (BS) reached 245 in 1991. In 1994, her BS fluctuated between 85 and 216, and she complained of pain in the left hip, flank area, left elbow, and fingers. (Tr. at 92-95, 97-98.)
In 1996, plaintiff visited Dr. Williams seven times. She complained of job anxiety, headaches, and neck and elbow problems. She also maintained that her hands got clawlike at times. Her BS varied from 91 to 241; her systolic BP ranged from 90 to 110. On April 22, 1997, plaintiff complained of frequent right hip pain and was prescribed medication. On June 17, she complained of nausea, fatigue, and drowsiness after taking a medication, as well as severe pain and job stress. Dr. Williams noted that she had or complained of crepitus [1] in the knees and bad arthritis. On July 29, Dr. Williams noted that she complained of a 5-day headache, that she was to have a retirement party on July 30, and that her job was too stressful. Plaintiffs BP was 142/70; her BS was 93; and she weighed 227 pounds. After July 29, plaintiff went to Dr. Williams three times in 1997: once for sneezing and congestion; *947 once for a flu shot; and once for a "wellwomen's exam." (Tr. at 101-04.)
On February 3, 1998, plaintiff complained of gastric burning. Dr. Williams prescribed Pepcid. Her BP was 150/100. She complained on May 5 of sneezing and on June 2 of occasional swelling in her feet. On a subsequent visit, having found her sister dead the previous week, plaintiff complained of anxiety, chest fullness, discomfort radiating to her back, and shoulder and hip pain. Plaintiffs BP readings throughout 1998 were 150/100, 144/92, 154/90, and 150/92. X-rays were taken of her left hip and left shoulder in December 1998, and reviewed by physicians. The left hip x-rays showed no fracture, subluxation, or dislocation; slightly decreased joint space; and normal soft tissues. The medical opinion was mild osteoarthritis. The shoulder x-ray was normal. On May 26, 1999, Dr. Williams noted pain exacerbated by exercise and that plaintiff would try an exercise bike. He prescribed Celebrex. (Tr. at 105-07,116.)
On November 10, 1999, Dr. Williams completed a range-of-motion (ROM) form, noting several passive ranges. Plaintiff had full ranges in the ankles, elbows, wrists, and elbows As to the cervical spine, her lateral flexion was 30 out of 45 degrees. Her forward hip flexion was 80 out of 100 degrees bilaterally. As to the lumbar spine, flexion-extension was 80 out of 90 degrees; lateral extension was at full range, as was straight leg raising. On a l-to-5 scale, with 5 being normal, lower extremity muscle weakness measured 4 on each side. Similarly, she scored at least that high on grip and upper-extremity strength. Shoulder flexion was 160 out of 180 degrees bilaterally; shoulder abduction was a 50 out of 180 degrees bilaterally; and left knee flexion-extension was 130 out of 150 degrees. Dr. Williams noted plaintiff experienced pain during right-hip and shoulder flexion. (Tr. at 111-12.)
On November 29, 1999, Dr. Williams completed a disability form. He described plaintiffs gait as normal, and noted that she had type 2 diabetes and high BS. Answering a question about joint pain, swelling, tenderness, and inflammation, he wrote that she had no effusion.[2] Describing her ability to perform work-related functions despite any observed functional limitations, he wrote, "no prolonged standing] walking long distances, lifting objects >15 lbs.[,] or lift raising arms above head." (Tr. at 109-110.)
Consultative examiner Dr. Bassam Albarcha saw plaintiff on December 3, 1999, regarding complaints of arthritis, diabetes, and high BP. Her BP was 160/90, she weighed 224 pounds, and her heart rate was 80 beats per minute. She was on Norvasc (for high BP), Lipitor (for high cholesterol), Avandia (for diabetes), Glucotrol XL (for diabetes), Celebrex (for arthritis), Darvocet (for pain), and Caltrate (a calcium supplement). She informed him that her current medication controlled her hypertension and usually but not always relieved her arthritis. As to daily living activities, she reported that she could dress, eat, cook, and wash by herself. With her left-shoulder pain she could lift up to 5 pounds at a time. She could not walk or travel without pain or discomfort in her extremities. On a range-of-motion form, Dr. Albarcha recorded that she had limited ranges of motion in her left shoulder, left elbow, hips, both knees, and cervical and lumbar spine. Because of knee and hip pain, she had a bit of difficulty getting on the examination table and needed help. During the examination she complained *948 of pain in the tailbone; changing her positioning relieved the pain. Her breathing and gait were normal, her joints were free from effusion and at full strength, and she had no tenderness, inflammation, or swelling. Dr. Albarcha's assessment included, inter alia, type 2 diabetes, without organ damage; chronic but controlled high BP; obesity; and osteoarthritis. (Tr. at 119-25.)
On February 3, 2000, medical consultant Dr. Kevin L. Threlkeld completed a Physical Residual Functional Capacity (RFC) Assessment form. In view of plaintiffs having only mild arthritis of the hip, Dr. Threlkeld disagreed with Dr. Williams's November 29, 1999 statement that plaintiff should not do prolonged standing and long-distance walking. Citing plaintiffs nearly normal strength and normal rightupper-extremity ROM, he also disagreed with Dr. William's determination that she should not lift objects greater than 15 pounds. Thus, he concluded that she could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and push and pull (subject to the noted lift and carry limitations). For supporting evidence, Dr. Threlkeld summarized Dr. Albarcha's assessment and the December 1998 x-ray results. The only postural limitation Dr. Threlkeld assessed, due to degenerative joint disease (DJD) and obesity, was that plaintiff could only occasionally do climbing activities. He noted one manipulative limitationreachinggiven plaintiffs left shoulder pain and decreased ROM, "although not well supported by normal x-ray." Plaintiff had no visual or communicative limitations. As to environmental limitations, she was to avoid concentrated exposure to extreme heat and cold because of obesity, and to avoid vibration because of DJD. (Tr. at 126-30, 132.)
Dr. Threlkeld wrote the following about plaintiffs symptoms:
Claimant is partially credible. Her ROM charts are conflicting, ... especially regarding the [left] shoulder. The previous negative [left] shoulder x-ray & mild arthritis only hip x-ray are not supportive of her allegations. Her symptoms & use of arthritis medication are taken into consideration & RFC is restricted accordingly.
(Tr. at 131.)
On March 22, 2000, in a disability-status examination, plaintiff complained of extreme pain in the lower back, knees, and shoulders that caused headaches. She weighed 231 pounds. Her BS was 97. She had nasal congestion. Dr. Williams noted a decreased neck ROM, a decreased grasp reflex, upper extremity strength at 4 out of 5, and left-knee crepitus. Noting allergies and arthritis, he prescribed Claritin and Tylenol. (Tr. at 136.)
On March 28, 2000, Dr. Williams completed a disability assessment form. He noted that plaintiff had pain on walking and medical prescriptions for hypertension and diabetes. He left blank a portion of the form (Question 4) that asked for a summary of supporting clinical or laboratory findings. Describing plaintiffs ability to perform work-related functions despite any observed functional limitations, he wrote, "unable to do any prolonged work due to pain (joint)." He opined that joint pain made her incapable of sustained employment at the sedentary-work level, as defined by the Commissioner, and that her total disability existed by or before July 1997. (Tr. at 138.)
On May 17, 2000, the ALJ conducted a hearing. Plaintiff testified as follows. On July 31, 1997, at age 62, she stopped working because she could take early retirement. She had been having problems with her shoulders and legs, arthritis, getting *949 up and down, and job stress, but had not been able to retire until she turned 62. Moreover, at work she had trouble with her tailbone and sitting. Her employer got her a new chair and a pillow, but she "just couldn't sit, sit, sit all that time." The arthritis causes pain constantly and affects her feet, legs, knees, ankles, elbows, hands, and neck, and makes her unable to tie an apron or put on a belt. Too much exercising or walking worsens the pain. After walking into a mall from the parking lot, she would have to sit because of being tired and having knee and ankle pain. She could stand for only 5 or 10 minutes before feeling great pain. At the hearing she was using a cane and had used it at times since about 1983. (Tr. at 27-32.)
She further testified that she could not carry 4 pounds of sugar without her arm giving out and could sit no longer than 35 minutes without having to get up because of tailbone and hip pain. To relieve pain, she took Celebrex, used an arthritis ointment, and took hot baths with her daughter's assistance. She no longer drove because of leg cramping and a bad elbow. Around the house, she generally ate microwaveable meals, could not vacuum because of shoulder pain, and did only light laundry, such as undergarments. She spent her days lying down and sitting up, and watching television. On Sundays, she went to church. She sleeps poorly. Her BP fluctuates, but causes no major problems. (Tr. at 32-36.)

B. The ALJ's decision
In a June 23, 2000 decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date, and that she has obesity, severe osteoarthritis, diabetes, and hypertension, but no impairment or a combination of impairments that medically meets or equals the severity of any impairment listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that she had a good work record and was generally credible, but that the evidence as a whole showed that she was not credible as to the extent of her alleged physical limitations. (Tr. at 14-17.)
The ALJ gave "neither controlling weight nor much deference" to Dr. Williams's March 2000 opinion (that plaintiff could not perform sedentary work), because it (1) was not well supported by acceptable clinical and laboratory diagnostic techniques, e.g., Dr. Williams left blank Question 4, and (2) was inconsistent with the other substantial evidence in the record. Dr. Williams had indicated in November 1999 that plaintiff could perform sedentary work. Next, the ALJ found that plaintiff has the maximum RFC to lift and carry no more than 15 pounds; that she can sit for up to 6 hours, and stand and/or walk for up to 2 hours, in an 8-hour workday; that occasionally she can reach with her left shoulder and climb; and that she should avoid extreme temperatures and vibration. This RFC, the ALJ determined, reflects an ability to perform a range of sedentary work.[3]
The ALJ noted that plaintiff had indicated that her past relevant work as a customer service representative required walking and standing for less than an hour and required no lifting and carrying. The ALJ also "note[d] that the Dictionary of Occupational Titles (DOT) describes customer service representative (DOT #239.362-014) as sedentary, semi-skilled *950 to skilled work that does not require more than occasional climbing and occasional reaching and did not require exposure to extreme cold, to extreme heat, and to vibration." Plaintiffs past relevant customer-service work, the ALJ explained, "did not require the performance of work-related activities precluded by the above limitations." Thus, the ALJ made a finding of not disabled. (Tr. at 15-17.)
The Appeals Council declined further review. (Tr. at 4.) Thus, the ALJ's decision became the final decision of defendant Commissioner subject to judicial review.

II. DISCUSSION
Plaintiff raises two arguments in support of her complaint: (1) substantial evidence does not support the determination that she retains the RFC to perform her past relevant work, and (2) the ALJ improperly evaluated the March 2000 assessment of Dr. Williams, her treating physician.
A five-step analysis used for determining disability. See 20 C.F.R. § 404.1520(a)-(f) (2002); Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (describing the analysis). If, at any point in the analysis, a claimant can be found disabled or not disabled, the claim is not to be reviewed further. See 20 C.F.R. § 404.1520(a). The claimant bears the initial burden to show the inability to perform past relevant work. See Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir.1995). A claimant who can still do past relevant work will be found "not disabled." See 20 C.F.R. § 404.1520(e). Otherwise, the claimant's RFC will be considered, as well as the claimant's age, education, and past work experience to see if the claimant can do other work. See 20 C.F.R. § 404.1520(f).
The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir.2000). So long as substantial evidence supports that decision, the court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier, 294 F.3d at 1022.
Starting with plaintiffs arguments concerning the weight the ALJ gave to Dr. Williams's March 28, 2000 opinion on the disability assessment form, the court is mindful that "[a]n ALJ should ordinarily give substantial weight to a treating physician's opinion." Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir.2003). If the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with the other substantial evidence in the record, the ALJ can give it less weight. See 20 C.F.R. § 404.1527(d)(2); Edwards, 314 F.3d at 967; Prosch, 201 F.3d at 1012-13. When the treating source's opinion is not given controlling weight, several factors are considered in determining the amount of weight to give to the opinion. See 20 C.F.R. § 404.1527(d)(2)-(6) (listing the factors). The ALJ must always give good reasons for the weight given to the treating source's opinion. See 20 C.F.R. § 404.1527(d)(2).
The ALJ gave good reasons for giving neither controlling weight nor much deference to Dr. Williams's March 28, 2000 *951 opinion. First, the opinion was not wellsupported by medically acceptable clinical and laboratory diagnostic techniques: Dr. Williams left blank Question 4, which called for a summary of supporting clinical or laboratory findings. See 20 C.F.R. § 404.1527(d)(2); Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir.1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements."). Plaintiff submits that Dr. Williams's March 28 assessment "was backed by more than twenty pages of treatment notes," which plaintiff identifies as including "x-rays, bone density testing, blood pressure readings and blood sugar readings, as well as detailed findings from multiple physical examinations." Plaintiff has not provided any authority suggesting that the ALJ was required to divine support in the record for a facially unsupported opinion, especially in light of contradictory opinions from other physicians. Moreover, most of the documents identified by plaintiff as backing Dr. Williams's latter assessment were the very ones Dr. Williams attached to his November 29, 1999 opinionin which he wrote, "no prolonged standing[,] walking long distances, lifting objects >15 lbs.[,] or lift raising arms above head."[4]See Prosch, 201 F.3d at 1013 (the ALJ did not err in considering the treating physician's first opinion in evaluating the reliability of his second one).
Although substantial evidence supports the ALJ's determination regarding the weight to give to Dr. Williams's March 28, 2000 opinion, substantial evidence does not support the ALJ's determination that plaintiff retained the RFC to perform her past relevant work as a customer service representative. In forms submitted to the SSA, plaintiff indicated that her job required at least 7 hours of sitting per day, which her arthritis made painful. She also testified that she was having trouble working because her job required extensive sitting. While the ALJ determined that plaintiff was not credible to the extent that she was as physically limited as alleged, the ALJ did not discredit the evidence that plaintiffs past job required at least 7 hours of sitting per day. Instead, the ALJ relied "on the claimant's descriptions" as to the amount of standing, lifting, and carrying in finding that her past relevant work as a customer service representative did not require the performance of work-related activities precluded by the limitations. DOT # 239.362-014, mentioned by the ALJ, does not address the number of hours of sitting involved in the occupational title of "customer service representative." For these reasons, the ALJ's RFC determinationthat plaintiff can sit for up to 6 hours in an 8-hour workdayconflicts with the sitting requirements of her past relevant work.
Because the ALJ never reached the fifth step in disability analysis described, 20 C.F.R. § 404.1520(f), remand is necessary. An appropriate order is issued herewith.

ORDER OF REMAND
In accordance with the written memorandum opinion issued herewith,
IT IS HEREBY ORDERED that the final decision of the defendant Commissioner of Social Security denying disability benefits to plaintiff Evelyn Crudup is reversed. This action is remanded to the defendant Commissioner of Social Security under Sentence 4 of 42 U.S.C. § 405(g) for further proceedings. Consistent with the opinion of the court, upon remand, the *952 Commissioner shall make specific supplemental findings under the step 5 of the analysis for determining disability benefits, 20 C.F.R. § 404.1520(f).
NOTES
[1] Crepitus means "the grating of a joint." See Stedman's Medical Dictionary 368 (25th ed.1990).
[2] "[E]ffusion" is "the escape of fluid from the blood vessels or lymphatic into the tissues or a cavity." Id. at 491.
[3] The ALJ noted that this determination reflected some of the factual findings made by Dr. Threlkeld. However, he recognized differences between the two RFCs and explained that his RFC determination was based on evidence, such as the hearing testimony, which was not available to medical consultants. (Tr. at 15.)
[4] As noted, supra at 947, the shoulder x-ray was normal and the left-hip x-rays showed no fracture, subluxation, or dislocation; slightly decreased joint space; and normal soft tissues.