NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0860n.06

No. 13-5455

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Oct 02, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSEPH R. BRANON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MERRITT and CLAY, Circuit Judges; and STAFFORD, District Judge.[*]

**MERRITT, Circuit Judge.** This is an appeal from a denial of social security disability benefits brought pursuant to Section 205(g) of the Social Security Act. 42 U.S.C. § 405(g). Because substantial evidence supports the denial of benefits, we affirm. The question turns on the credibility of the testimony of a vocational expert that significant jobs exist in the economy to accommodate plaintiff, whose disability has attributes of both "sedentary" and "light" work under the so-called "medical-vocational grids" used by the Social Security Administration.

## I. Background

Plaintiff Joseph Branon worked as a lineman for the telephone company for thirty years. Over the course of his employment, he developed gradually deteriorating back problems. Plaintiff filed for benefits in September 2006, claiming he became disabled on May 31, 2006,

_____

[*]The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

due to degenerative disc disease. He was 48 years of age at that time and had retired from his job at the telephone company after spending about six months on "light duty" due to his back problems. The record seems to indicate that he wanted the onset of his disability claim to coincide with his retirement from the telephone company. The disability claim was denied in August 2008, by which time plaintiff had turned 50 years old.[1] After the Appeals Council denied review, plaintiff appealed to the district court. The district court remanded the case because the administrative law judge failed to acknowledge plaintiff's change in age category during the course of the proceedings. The district court noted that the change from the "younger person" category to the "approaching advanced age" category might make no difference in the outcome, but it must be considered by the administrative law judge. *Branon v. Astrue*, 2010 WL 4809041, at *1 (W.D. Ky. Nov. 18, 2010). On remand, the administrative law judge conducted another hearing that included testimony by a vocational expert, but no other new evidence was submitted. The administrative law judge acknowledged that plaintiff was now over 50 years of age, but again denied benefits. The Appeals Council denied review, and plaintiff appealed to the district court again. A magistrate judge issued a Report and Recommendation in favor of the Commissioner. The district court adopted the magistrate judge's Report and Recommendation in a summary order. This appeal followed.

---

[1]Age 50 serves as a demarcation line between "younger person" (less than 50 years of age) and "person closely approaching advanced age" (50-54 years of age) for purposes of analyzing disability claims.

2

On appeal, plaintiff makes essentially two broad arguments,  First, he contends that the residual functional capacity determined by the administrative law judge is unsupported by the evidence and in violation of legal standards.  His second argument is that the administrative law judge failed to use the medical-vocational grids "favorably" as required by the social security rules and further that if they had been applied correctly he would have been entitled to a determination of "disabled" at age 50 as a matter of law.

## II.  Merits

On appeal from a denial of benefits, we review a district court's decision *de novo*.  *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).  However, we review the final decision of the Social Security Administration    in this case the decision of the administrative law judge dated August 24, 2011    to determine whether the applicable legal standards were applied, and whether substantial evidence exists in the record to support the decision.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A claimant will be considered "disabled" under the Social Security Act if he meets two requirements.  *See* 42 U.S.C. § 423(d).  First, he must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2) (A).  If the plaintiff cannot perform

3

his past work, the burden shifts to the Commissioner to show that, considering the plaintiff's age, education, work experience, and residual functional capacity,[2] the plaintiff is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *see Bowen v. Yuckert,* 482 U.S. 137, 146, n.5 (1987).

## A.  Residual Functional Capacity

Based on his review of the entire record, including medical records, opinions of treating and non-treating physicians, and plaintiff's own testimony, the administrative law judge determined that plaintiff had the residual functional capacity to perform a limited range of light work.[3]  Plaintiff contends that the administrative law judge failed to adequately consider the opinions of his treating neurosurgeon, Sean McDonald, M.D., in reaching this finding.

---

[2]Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Social Security Ruling 96 8p.

[3]Residual functional capacity is the most plaintiff can do, not the least, after taking into consideration physical and mental limitations. *See* 20 C.F.R. § 404.1545(a); Social Security Ruling 96-8p:  Policy Interpretation Ruling Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims.  Jobs are categorized as sedentary, light, medium, heavy and extra heavy.  We are concerned here with only the sedentary and light categories.  Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . .  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).  Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . .  A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

Plaintiff sought treatment from Dr. McDonald starting in 2005. Dr. McDonald diagnosed lower back pain and lumbar radiculopathy and prescribed medication. Diagnostic tests showed possible disc herniation but no evidence of nerve root impingement. Plaintiff declined surgery or physical therapy preferring to stick with a home exercise program, medication and epidural steroid injections. Because plaintiff wanted to continue to work until his eligibility for retirement on May 31, 2006, and he was unable to continue in his work as a lineman, Dr. McDonald gave plaintiff a letter to give to his employer in the fall of 2005 that stated he could lift no more than five pounds frequently and 15 pounds occasionally, could not stay in one position more than 20 minutes, no working at heights and no repetitive bending or twisting at the waist. In December 2005, Dr. McDonald noted no significant changes from the last visit and he recommended that plaintiff continue with "light work" of a "sedentary" nature in his employment. Dr. McDonald gave the same report in March 2006. Plaintiff retired on May 31, 2006.

In September 2006, plaintiff saw Dr. Laxmaiah Manchikanti, a pain specialist. At that time, plaintiff reported to Dr. Manchikanti that he could sit for one hour, stand for 30-40 minutes, and lift 30-40 pounds. Dr. Manchikanti reported a normal gait, mild tenderness in neck and back, normal strength and normal reflexes. Dr. Manchikanti diagnosed lumbar disc displacement and lumbar and cervical degeneration. He recommended physical therapy and lumbar steroid injections. Plaintiff commenced injection therapy approximately every three months, as well as taking prescribed medication and seeing Dr. Manchikanti periodically, claiming "great relief" in the weeks following the injections.

At some point, plaintiff stopped taking prescription medication. At a January 2008 visit, plaintiff reported to Dr. Manchikanti that "nothing is working." The report from that appointment indicates that his condition appeared satisfactory but that plaintiff no longer wanted to continue with medication or injection therapy. He was discharged in "satisfactory condition" and did not make a return appointment. This is the last medical record in his file until a physician hired by the Commissioner examined his file and concluded, based only on the file and without actually seeing plaintiff, that plaintiff could lift 50 pounds occasionally, 25 pounds frequently and could stand or walk for six out of eight hours.

We find that the objective clinical and diagnostic findings provide substantial evidence to support the findings of the administrative law judge that plaintiff can perform a limited range of light work. The administrative law judge also noted that plaintiff refused more aggressive treatment, eventually even foregoing the steroid injections and pain medication and choosing to rely only on over-the-counter medications, with no explanation. This conservative treatment approach suggests the absence of a disabling condition. In addition, plaintiff's own assessments of his limitations do not support a finding of a disabling condition. He reported to Dr. Manchikanti abilities greater than Dr. McDonald reported to plaintiff's employer. He reported that he could stand for 30-40 minutes, sit for an hour and lift 30-40 pounds. He also reported doing some roofing in 2006 after the onset of disability, occasionally hunting and fishing, and mowing a small piece of lawn.

The administrative law judge accepted some, but not all, of Dr. McDonald's medical findings. Plaintiff's own reports were inconsistent with the findings of his physicians. But

6

plaintiff faults the administrative law judge because he did not give sufficient weight to the low-ball finding of Dr. McDonald that plaintiff could lift no more than five pounds frequently and 15 pounds occasionally, could not stay in one position more than 20 minutes, and could not do any repetitive bending or twisting at the waist. The administrative law judge noted that this finding, and in fact all of Dr. McDonald's reports except one or two, were made before the disability onset date of May 31, 2006, and thus were outside the disability period. The administrative law judge also noted that there was nothing current from Dr. McDonald about plaintiff's condition in the record.

Plaintiff claims that the administrative law judge's finding concerning his residual functional capacity was "internally inconsistent, contradictory and unsupported." Pl. Br. at 6. The magistrate judge agreed, but found the error harmless because it did not have an effect on the outcome. Report and Recommendation at 2-3. The administrative law judge found that plaintiff suffers from a non-exertional impairment, that is, a postural impairment necessitating that he alternate between sitting and standing every 30 minutes. The administrative law judge found that plaintiff can "sit, stand and/or walk, about six hours each in an eight-hour workday, but needs the option to alternate between sitting and standing about every 30 minutes." The magistrate judge pointed out that "simple arithmetic" shows that an individual who must alternate between sitting and standing every 30 minutes would stand for about four hours and sit for about four hours in an eight-hour workday.

We agree with the magistrate judge that any error is harmless. A review of the hearing transcript and the hypotheticals posed to the vocational expert make clear that the administrative

law judge understood that plaintiff must be able to change positions between sitting and standing regularly. The hypotheticals were clear and without inconsistency. One of the hypotheticals asked the vocational expert to identify jobs where the individual could "sit and stand in 30-minute increments, would have to sit for 30 and stand for 30." Hr'g Tr. at 17. The vocational expert testified at length about jobs in Kentucky and the national economy where an individual would be allowed to alternate between sitting and standing and then went on to explain that there are a significant number of jobs, such as information clerk jobs, where the individual could sit, stand or move about at will so long as he stayed at his work station. The vocational expert also identified a significant number of cashier jobs, noting that they were mostly sedentary when viewed from the standing requirement, but were considered light because the individual might have to lift 10-20 pounds occasionally. Hr'g Tr. at 18-19. Where, as here, the description of the residual functional capacity given by the administrative law judge to the vocational expert included all the relevant limitations, we rely on that description and not the characterization in the written description. *English v. Astrue*, 2008 WL 782443, at *5 (W.D. Ky. Mar. 21, 2008).

### B. The Medical-Vocational Guidelines or "Grids"

Once an administrative law judge determines a plaintiff's residual functional capacity, he may use the medical-vocational guidelines, or "grids," to determine the plaintiff's level of disability and potential for employment. The grids catagorize jobs by their physical-exertion requirements,[4] namely, sedentary, light, medium, heavy, and very heavy. *See* Social Security

---

[4]An exertional limitation is an impairment-caused limitation that affects one's capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying

Ruling 83 10. There are numbered tables for the sedentary, light, and medium level (Tables 1, 2, and 3, respectively), and a specific rule, not applicable here, for the heavy and very heavy levels. Social Security Ruling 83 10; 20 C.F.R. Part 404, Subpt. P, App. 2. Based on the plaintiff's residual functional capacity, the administrative law judge must first determine which table to apply, if any. For instance, if the plaintiff's residual functional capacity limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the plaintiff's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled." The administrative law judge can utilize the grids *only* where the grids accurately and completely describe the plaintiff's abilities and limitations. Therefore, a finding of "disabled" or "not disabled" based solely on the grids is only appropriate when the ability to perform a *full* range of either medium, light or sedentary activities is present.

In this case, the administrative law judge found that plaintiff's residual functional capacity was for a limited range of light work, a finding that falls *between* the category of "light work" and "sedentary" for purposes of the grids because plaintiff needed the option to change position every 30 minutes or so. To be able to do a full range of light work requires more continuous standing or walking than plaintiff is capable of. Sedentary work requires more continuous sitting than plaintiff is capable of. Had plaintiff been able to perform *the entire range* of light work, the grid would have mandated a finding of "not disabled." Had the administrative law judge found that plaintiff's residual functional capacity limited him *entirely* to sedentary

pushing, and pulling. *See* Social Security Ruling 83 10.

9

work, the applicable grid would have found plaintiff "disabled." *Compare* 20 C.F.R. Part 404,

Subpt. P, App. 2, Table 1 Residual Functional Capacity: Maximum Sustained Work Capability

Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s), Rule

201.14 *with* 20 C.F.R. Part 404, Subpt. P, App. 2, Table 2 Residual Functional Capacity:

Maximum Sustained Work Capability Limited to Light Work as a Result of Severe Medically

Determinable Impairment(s), Rule 202.14. Because plaintiff had the additional limitations of

needing to alternate between sitting and standing at 30-minute intervals and not being able to

push or pull weight repetitively, plaintiff does not fall entirely within either grid.

When a plaintiff's residual functional capacity is not squarely within either grid, the grid

guidelines are not binding and instead are used only as an analytical framework. 20 C.F.R. Part

404, Subpt. P, App. 2, § 200.00(d). In such a situation, Social Security Ruling 83-12 directs that

a vocational expert be called to testify as to whether a significant number of jobs exist in the

national economy that a hypothetical individual with plaintiff's limitations can perform.[5] So long

---

[5]SSR 83 12 states:

> In some disability claims, the medical facts lead to an assessment of
> RFC which is compatible with the performance of either sedentary or
> light work except that the person must alternate periods of sitting and
> standing. The individual may be able to sit for a time, but must then
> get up and stand or walk for awhile before returning to sitting. Such
> an individual is not functionally capable of doing either the prolonged
> sitting contemplated in the definition of sedentary work (and for the
> relatively few light jobs which are performed primarily in a seated
> position) or the prolonged standing or walking contemplated for most
> light work. . . . However, most jobs have ongoing work processes
> which demand that a worker be in a certain place or posture for at
> least a certain length of time to accomplish a certain task. Unskilled
> types of jobs are particularly structured so that a person cannot

as the hypothetical is accurate, the administrative law judge may rely on the vocational expert's testimony to find that the plaintiff can perform a significant number of jobs in the national economy. That is exactly what the administrative law judge did, and we find no error in his approach.

Plaintiff then argues that he should be found "disabled" because the finding that he can do only some, not all, of the jobs identified as light somehow "erodes" or "decimates" the number of jobs available to him. However, that is not how the rules work, as explained by the Social Security Ruling quoted in footnote five above. The residual functional capacity is based on the plaintiff's particular disabilities, which then leads to a further question for the vocational expert as to whether a significant number of jobs exist in the economy suitable for an individual with plaintiff's disabilities. The vocational expert is not a medical expert and does not opine in any way about the plaintiff's particular physical or mental limitations. He testifies only as to what kinds and how many jobs exist that would be suitable for the plaintiff based on the administrative law judge's hypotheticals.

The vocational expert noted only that the jobs identified were so limited in their exertional requirements that they could be performed by individuals limited to both light work and less than light work. An individual who is limited to light work can generally also perform

---

ordinarily sit or stand at will. *In cases of unusual limitation of ability to sit or stand, a vocational expert should be consulted to clarify the implications for the occupational* base.
(Emphasis added.)

sedentary work and this does not require or indicate any change to that individual's residual functional capacity. *Anderson v. Comm'r of Soc. Sec.*, 406 Fed. App'x 32 (6th Cir. 2010). The vocational expert testified that there exists a significant number of jobs in both Kentucky and the national economy that plaintiff could perform. The jobs would allow plaintiff to alternate between sitting and standing every 30 minutes throughout the work day    for example, information or desk clerk and certain kinds of cashier jobs. Hr'g Tr. at 18-19.

For the foregoing reasons, we affirm the judgment of the district court.